# MILES D. SUTTON v. BOARD OF EDUCATION OF CITY OF. DULUTH.[1]

April 9, 1936.

No. 30,736.

*Jenswold, Jenswold & Dahle,* for appellant.
*Edward L. Boyle,* for respondent.

HOLT, JUSTICE.

This is an action by one of defendant's school teachers to recover a balance of salary claimed to be due him from the commencement of the school year of 1934-1935 until the beginning of the action. At the close of the testimony each party moved the court for a directed verdict. Plaintiff's motion was denied. Defendant's was granted. Plaintiff appeals from the order denying his motion in the alternative for judgment notwithstanding the verdict or a new trial.

There is no dispute as to the facts involved. Defendant is organized under Sp. L. 1891, c. 312, and governed by its provisions

[1]Reported in 266 N. W. 447.

. and the laws pertaining to independent school districts of the state. Its territory is the city of Duluth, as it may be extended. It holds and controls all public school grounds, buildings, and equipment within the city and conducts the schools therein. And for that purpose it employs a superintendent, principals, assistants, teachers, and other help needed, for such compensation as may be agreed. It contracts for all necessary supplies, including heat and light and the preservation and care of the school property. For each year it is authorized to levy, within stated limits, a tax upon the assessed valuation of all property within the city. This provides the main funds out of which its contracts and obligations must be met. Other sources of revenue provided by law each school year may be estimated with reasonable certainty.

In 1923 defendant by resolution adopted what is termed a salary schedule, since amended in particulars not here material. It is entirely too lengthy to be here inserted or summarized. It bears evidence of much thoughtful consideration of the means to secure an efficient corps of teachers. Teachers are placed in four different classes, graded according to their training and experience in teaching. In the fourth class are those holding a master's degree from a university or similar institute of learning, in which class the minimum salary is $1,600 and the maximum $3,000. Each year's service brings the compensation nearer the maximum. It contains this statement:

"It is a schedule under which teachers with equivalent training and experience are paid equal salaries, no matter in which grade or type of school they may serve."

There are provisions under which a teacher may pass from a lower to a higher salary class on attaining a university degree. Among the purposes sought by the adoption of the schedule, as therein stated, were: To indicate the annual rate of increase from the minimum to the maximum salaries; to enable defendant to arrive at a more accurate estimate of the financial needs of the schools through a definite knowledge of future requirements for salaries; to enable defendant to attract and hold teachers of unusual merit;

to encourage the professional improvement of teachers in service. This paragraph, of some importance here, is found in the schedule:

"All teachers shall be elected for a period of a full school year unless at the time of their election a shorter period shall be specified and such shall be specified in and form a part of the teacher's contract."

Printed copies of the schedule were furnished the teachers. It is conceded that up to and including the school year 1931-1932 the annual contracts between defendant and its teachers specified the yearly salary in conformity with the schedule. But by that time the depression had so reduced the assessed valuation of the property within defendant's territory that it was found impossible to carry on the schools unless reductions were made in the salaries paid its teachers. So a certain percentage decrease from the amounts specified in the salary schedule was made in the annual contracts with the teachers for the school years 1932-1933 and 1933-1934, and these contracts were accepted and signed by plaintiff and the other teachers. In the annual contract for the school year 1934-1935 the reduction from the amount named in the salary schedule was 24 per cent. This plaintiff refused, but continued teaching, and was paid monthly the amount stated in the contract tendered. Plaintiff all the time protested that his salary was determined by the salary schedule. If so, the amount of $401.22, claimed in the complaint, was justly due him.

Plaintiff entered defendant's employ as a teacher in its high school in 1918 and has ever since continued as such teacher in charge of a department therein. He has now acquired a master's degree and is under class IV of the salary schedule.

By the enactment of L. 1927, c. 36 (1 Mason Minn. St. 1927, §§ 2935-1 to 2935-14, teachers tenure act), plaintiff became a permanent teacher in defendant's schools and cannot be deprived thereof or demoted except for cause to be established at a hearing. Oxman v. Independent Sch. Dist. (the same entity as defendant herein), 178 Minn. 422, 227 N. W. 351; School City of Elwood v. State ex rel. Griffin, 203 Ind. 626, 180 N. E. 471, 81 A. L. R. 1027; State

ex rel. Nyberg v. Board of School Directors, 190 Wis. 570, 209 N. W. 683. Plaintiff's contention is that he is a teacher at the salary named in the salary schedule, and that an annual contract between defendant and its teachers is not necessary in order to maintain an action for his salary.

When the salary schedule was adopted it could not serve as a substitute for the annual contract of employment between defendant and its teachers. The law required such contract to be formally executed for each school year. 1 Mason Minn. St. 1927, § 2903; Martin v. Common Sch. Dist. No. 3, 163 Minn. 427, 204 N. W. 320. Counsel cites Oxman v. Independent Sch. Dist. 178 Minn. 422, 227 N. W. 351, as settling that no annual contract is needed between defendant and its permanent teachers. That case did not involve the amount of the teacher's salary; it was for the wrongful refusal to allow a permanent teacher to earn her salary. She had executed the contract tendered by the defendant for the school year, but defendant did not complete its execution thereof. So the holding in that case should not be taken to cover more than the issue there involved. Here defendant and its teachers always acted under the belief that a written contract signed by the teacher and defendant was necessary to fix the salary for every school year. From the beginning of plaintiff's employment such a contract, stating the amount of his salary and at what time it should be paid, was executed for each school year by both parties thereto, except for 1934-1935. As above stated, the salary schedule itself indicates that each school year such a contract should be executed. Taking all the circumstances into consideration, the salary schedule was a rule or guide pursuant to which the annual salaries were determined and embodied in the teacher's contract for each school year. No doubt defendant intended that all future contracts for teachers' services should conform thereto, and it was meant as a representation and inducement to teachers to enter defendant's employ. And it must be conceded that if the parties hereto were ordinary individuals with full power to enter into any contractual relation they pleased the many authorities cited by counsel would sustain a recovery on the basis that the schedule is in the nature of an offer to pay the salary

therein named, which becomes a binding contract upon the teacher accepting the service, and formal acceptance is not now needed as to permanent teachers under the tenure act. Cases are cited where even offers to groups or to the public become binding contracts for the compensation stated in the offer where an individual accepts the offer by performing. Mooney v. Daily News Co. 116 Minn. 212, 133 N. W. 573, 37 L.R.A.(N.S.) 183; Holt v. Rural Weekly Co. 173 Minn. 337, 217 N. W. 345. But defendant's powers to contract are circumscribed and limited by law, and everyone who deals with it is charged with knowledge of the extent of such powers. 5 Dunnell, Minn. Dig. (2 ed. & Supp. 1934) § 8672; Martin v. Common Sch. Dist. No. 3, 163 Minn. 427, 204 N. W. 320. No one could think that the adoption and promulgation of the salary schedule in 1923 definitely fixed the salaries of teachers for every future school year. Defendant is limited by law as to the maximum tax levy it may impose each year—the chief source of its revenue from which its pecuniary obligations must be met. In the nature of things it could not predict with any degree of certainty the assessed valuation of the property subject to its tax levy years in advance. 1 Mason Minn. St. 1927, § 2070, makes it "unlawful for the authorities of any county, town, city, village, or school district, unless expressly authorized by law, to contract any debt or incur any pecuniary liability for the payment of either the principal or the interest of which during the current or any subsequent years it shall be necessary to levy a rate of taxes higher than the maximum prescribed by law." And L. 1931, c. 159, § 1, 3 Mason Minn. St. 1934 Supp. § 1938-21, provides: "No school district, county, town or village shall contract any debt or issue any warrant or order in any calendar year * * * in excess of the average amount actually received in tax collections on the levy for the three previous calendar years plus ten percent thereof. * * *." By L. 1921, c. 332, the maximum annual tax levy defendant can make is 20 mills on each dollar of taxable valuation of the property within the district; under 1 Mason Minn. St. 1927, § 3012, a county school tax of an additional mill is extended; and by L. 1933, c. 359, 3 Mason Minn. St. 1934 Supp. §§ 1993, 1993-1, to

130

help out the schools, the reduction in homestead valuation is disregarded.

With the law thus strictly restricting the power of defendant to incur obligations for each school year to the funds collected during such year from the tax levies authorized by statutes, it is clear that the salary schedule cannot be understood to be the wage contract for each year. Especially must. that be true since the teachers tenure act went into effect. Before that defendant could refuse to reëmploy a teacher at the end of the school year unless such salary contract as it tendered was signed. There is nothing in the act mentioned which directly or indirectly has anything to say as to salaries of permanent teachers. Obviously, under the laws governing school districts this could not be done, for the contracts incurring expenditures for each school year must be entered into so as not to exceed the anticipated tax collection for such year, levied within the limits prescribed by law. The salary schedule of 1923 cannot be regarded as a permanent salary contract, but as a rule expressing the intention of defendant to follow it, as far as lies within its powers under the law, in naming the salary in the written contracts it enters with each teacher for each school year. Not only did defendant, but all its teachers, understand from the time of the adoption of the schedule in 1923, as well after the teachers tenure act went into effect as before that time, that for each school year separate contracts were to be agreed upon and executed by defendant with each one of its teachers, wherein the amount of the salary for that school year, and how paid, was definitely stated.

That all parties understood that such yearly contracts fixed the yearly salaries defendant agreed to pay and not the salary schedule appears rather conclusively from the fact that for the two school years preceding that of the one here involved contracts were made, accepted, and signed by all the teachers at salaries reduced in certain percentages below the amounts calculated and the salary schedule of 1923. The instability of property values, the basis for the revenues available to defendant, also shows. that the salary schedule could not be regarded as the contract under which the amount of each teacher's salary was fixed for each school year. Previous to

the school year 1931-1932 the assessed valuation of the property within defendant's territory subject to be taxed for school purposes had been as high as $80,000,000 in round figures. By the time of the school year 1931-1932 the depression had made itself felt so that such assessed valuation was $77,895,031, and thereafter steadily decreased each school year until in 1934-1935 it was only $56,131,807. For this last school year, after all taxes levied to the full extent of the maximum allowed by law, the estimated receipts therefrom and from all lawful sources during that school year will be $1,471,152. The teachers' salaries for that school year based as to amounts upon the salary schedule of 1923 would have been $1,619,200, to which must be added other necessary expenses such as for fuel, janitors, supplies, and incidentals estimated at $440,835. Defendant has no authority to go in debt for current expenses.

Under the conditions presented by this record it cannot be held that the salary schedule of 1923 fixed the amount of salary defendant is bound to pay plaintiff for the school year 1934-1935; and that the contract tendered by defendant, which plaintiff refuses to execute, offers him a salary as large in amount as defendant may lawfully agree to pay. The following authorities from states having statutes of somewhat similar bearing to our own respecting salary contracts between public school districts and their teachers in part support the ruling of the court below, that formal contracts are necessary each school year with respect to the amount of salary to be paid: Fidler v. Board of Trustees, 112 Cal. App. 296, 296 P. 912; Paquette v. City of Fall River, 278 Mass. 172, 179 N. E. 588; Vroom v. Board of Education, 79 N. J. L. 46, 74 A. 262; School Dist. No. 36 v. Pippin, 134 Okl. 136, 272 P. 455; State ex rel. Brown v. Polk County, 165 Tenn. 196, 54 S. W. (2d) 714. The proposition brought out is that where a school board of a public school district must provide by tax levy each year for the funds necessary to carry on the school for such year it should follow that contracts governing expenditures must be confined to the same period, and one board may not contract debts to be met by tax levies of subsequent school boards.

The order is affirmed.