# CAROLYN M. HOSFORD v. BOARD OF EDUCATION OF THE CITY OF MINNEAPOLIS.[1]

October 1, 1937.

No. 31,450.

[1]Reported in 275 N. W. 81.

2

*R. S. Wiggin,* City Attorney, and *Palmer B. Rasmusson,* Assistant City Attorney, for appellant.

*Oscar Hallam,* for respondent.

PETERSON, JUSTICE.

Action by plaintiff to recover the amount of salary due to her as a school teacher for a period during which she was excluded by defendant from performing her duties as a teacher. Plaintiff claims that she was unlawfully discharged in violation of her tenure rights under the teachers tenure law, L. 1927, c. 36 (1 Mason Minn. St. 1927, §§ 2935-1 to 2935-14). Plaintiff was employed by defendant under written contracts for three school years, 1930-1931, 1931-1932, and 1932-1933. During the school years 1933-1934 and 1934-1935 to the time of her discharge on March 15, 1935, effective March 22, 1935, plaintiff was employed without formal written contract. By the terms of the teachers tenure act, the first three years of consecutive employment are deemed to be a probationary period, during which any annual contract with a teacher may or may not be renewed as the school board or commissioner, as the case may be, shall see fit. (L. 1927, c. 36, § 4.) Under § 5 of the act, reëmployment of a teacher after the completion of the probationary period establishes tenure rights on the part of the teacher by reason of which there can be no discharge or demotion except for one of the causes specified in the statute and after a hearing as therein provided. This section is as follows:

"After the completion of such probationary period, without discharge, such teachers as are thereupon re-employed shall continue in service and hold their respective positions during good behavior and efficient and competent service and shall not be discharged or demoted except for one or more of the causes as specified in Section 6, and after a hearing as specified and provided in Section 7."

Defendant claims that plaintiff never acquired tenure rights because she resigned at the expiration of the third year of her probationary period and thereby abandoned her employment and any tenure rights which she may have acquired; that plaintiff was not thereafter reëmployed as a regular teacher but was appointed as a substitute teacher only; that any reëmployment was by the superintendent of schools, who acted without authority in the premises, and that the reëmployment, if any, was void because not evidenced by a contract in writing. Findings were made in favor of plaintiff. If these findings are supported by evidence they are final on appeal. Pye v. Hanzel, 200 Minn. 135, 273 N. W. 611; Haedge v. Gaver, 173 Minn. 207, 217 N. W. 109.

■ A resignation of public office is not complete and operative unless there be an intention to relinquish a part of the term, accompanied by the act of relinquishment. State ex rel. Young v. Ladeen, 104 Minn. 252, 116 N. W. 486, 16 L.R.A.(N.S.) 1058; 5 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 7989; 22 R. C. L. p. 556, § 259. Intent to relinquish the office or employment, together with the act of relinquishment, constitutes the resignation. Without the intention, a pretended relinquishment is not a resignation. The court below found that the resignation, so-called, was "not intended as a severance of plaintiff's employment as a teacher, and did not constitute a resignation in fact." Defendant offered evidence tending to show that on May 5, 1933, plaintiff submitted a resignation to the superintendent of schools, who forwarded it, with his changes of personnel, to the board of education, with certain special recommendations in which he stated that he recommended that plaintiff's reëmployment be deferred; that the recommendations of the superintendent were approved by the school board; that there-

after the superintendent notified plaintiff that her resignation had been accepted; that on July 1, 1933, plaintiff withdrew her payments from the teachers' pension fund by an application in writing in which she certified that she had ceased to be employed in teaching in the public schools of Minneapolis; that she assigned the monies due her from the pension fund to a bank, and in the assignment stated that she had ceased to be a teacher; that she agreed in writing to redeposit in the pension fund the amount withdrawn with interest in case she should resume teaching in the Minneapolis public schools; that in September, 1933, plaintiff made written application to be employed as a substitute teacher; that in September, 1933, plaintiff was reëmployed as a substitute teacher; that she did not redeposit in the teachers' retirement fund the amounts withdrawn by her and did not make any further payments to said fund; that plaintiff was carried upon the pay rolls and referred to in the quarterly bulletins, issued by the school board, as a substitute teacher.

Plaintiff claims that it was agreed between the superintendent and herself that the resignation would not terminate her connection with the defendant as a school teacher and that the purported resignation, standing alone, does not have the effect of severing that connection. She testified that she had a conversation with the superintendent of schools and his assistant in which it was agreed that the resignation would have the same effect as a resignation taken at the end of the previous school year, 1932, which was not to be effective if plaintiff made good as a teacher; that the superintendent stated to her that she was to do the same kind of work that she had been doing; that she was to go back to the same school and not to get excited about not being on contract. She was asked if anything was said with reference to the effect of the resignation, and her testimony is as follows:

A. "Yes, I said, 'I need the position, and I don't mind doing this if you will visit, but nobody has visited very much so far.' I said, 'I don't like to sign anything, due to the fact Mr. McWhorter [assistant superintendent of schools] keeps saying there are no

vacancies in the Minneapolis schools,' and Mr. Reed [superintendent of schools] had walked over to his desk meanwhile, and he looked back and answered, 'That doesn't apply to you; you are in, and you will never have gone out; you won't need to come in as a new teacher.' Mr. Schweickhard heard that conversation; he was in the room.  *  *  *  He said, 'You are not the only one that has been put on this special arrangement; the situation has arisen on account of the economic situation in Minneapolis, so many girls being ready to go on tenure and the city not having money to pay everybody,' really is what he said is the reason, and he didn't want me to get excited over that special arrangement. That is the card I objected to; that is why I went to see him."

At the time the first resignation was taken, in 1932, the superintendent informed plaintiff that complaints had been made concerning her and that the resignation was taken as a guarantee that she made good and that if she did make good the resignation would be destroyed. At the time the resignation was taken in May, 1933, the superintendent told her that this resignation was taken upon the "same principle" as the previous one. The first resignation was never submitted to the board of education and did not become effective. In addition to her claim of an agreement that her tenure was not to be affected by the resignation, plaintiff testified that when she received the card upon which to apply for a position as a substitute teacher she returned the card with a notation: "I had the understanding that my name would not be taken off the teachers' roll of names." With this notation on the card, she was reëmployed for the year 1933-1934. She was sent back to the same school, did the same kind of work, and in all respects performed her duties as she had done during the previous year. She did not take the place of a teacher regularly assigned to teach the classes which she taught, but taught every day during the school year the same as any regular teacher. Her salary during the previous year was $182.50 per month, less cuts affecting all types of teachers and deductions for the teachers' retirement fund. During the first 40 days of the school year 1933-1934 she was employed at a salary of

five dollars a day, and thereafter during the 1933-1934 school year, at $5.50 per day. Substitutes generally work only a few days per week and are paid from five dollars to six dollars for the days they actually work. Plaintiff worked every day. Her salary was somewhat less than that of a regular teacher. In 1934-1935 her salary was fixed at $190 per month basal salary. There is no such thing as a basal salary for substitutes. The basal salary applies only to regular teachers. Plaintiff's name was included in the blue book or manual as a regular teacher.

With respect to the action of the school board on the resignation of May 5, 1933, the minutes of the board's meeting show that the superintendent submitted two lists relative to personnel. On one plaintiff was listed as having resigned with special recommendations, in which it was stated by the superintendent that he recommended that her appointment be deferred for a month or two. On the other list, showing teachers reappointed, plaintiff's appointment was marked deferred. Both of these lists were approved by the board. Plaintiff's contention is that this amounts to no more than the deferring of her appointment and not an acceptance of her resignation.

The superintendent of schools, in explanation of plaintiff's testimony, did not contradict her directly except that he denied having told plaintiff she "was in," referring to the testimony of plaintiff which has been quoted above. The reëmployment for 1933-1934 and 1934-1935 he explained by saying that he designated plaintiff a "long call substitute" so that she "might be eliminated without going through the long process of tenure," and, secondly, so that he could extend the period of probation. Of the second reason, he said: "It gives us an opportunity to try out people when we are doubtful of their ability. We can try them out this way without difficulty."

The findings of the court below are sustained by the evidence. Why was the resignation taken? A resignation was not necessary to terminate plaintiff's employment at the end of the 1932-1933 school year. That employment expired automatically on June 16, 1933, when the contract expired. The employment could be continued only by a new contract. The resignation was not necessary

for its pretended purpose. It served no immediate purpose. This being true, it can be inferred that the resignation was taken for ulterior purposes and future use. If plaintiff were to be reëmployed, then the resignation might serve a purpose. It might then be used in an attempt to prevent plaintiff from acquiring tenure, keep her on probation, and discharge her without regard to tenure rights, as the superintendent testified. His testimony in this respect confirms the claims of plaintiff. Instead of accepting plaintiff's resignation, her reappointment was deferred. From this fact alone an inference may be drawn that defendant intended to reappoint her. The resignation was one in form only. Courts are not concerned with the name and appearance of things but with the reality. The evidence supports the finding that there was no intention that the resignation was to sever plaintiff's relation with the defendant as a teacher. Defendant relies upon Byrnes v. City of St. Paul, 78 Minn. 205, 80 N. W. 959, 79 A. S. R. 384, and Byrne v. City of St. Paul, 137 Minn. 235, 163 N. W. 162, L. R. A. 1917F, 545. In the Byrnes case the plaintiff voluntarily abandoned and relinquished his office, which we held to be a resignation by implication. There are no such facts in the case at bar. In the Byrne case it was found that the resignation was voluntarily given by the employe, to take effect upon acceptance by his superiors, and that it was accepted. In the case at bar there was no intention at all to resign, and therefore the cited case is not in point.

A resignation by a teacher at the end of her probationary period, given without any intention of terminating her employment as a teacher and upon a definite promise that she will be reëmployed, is ineffectual and does not defeat her right to tenure upon reëmployment. Reëmployment after completion of the probationary period gives rise to tenure rights on the part of the teacher. Such a resignation is in circumvention of the teachers tenure law and is void. Sherman v. Board of Trustees, 9 Cal. App. (2d) 262, 49 P. (2d) 350.

■ The court below found that plaintiff was employed and continued her employment as a teacher in the public schools of Minneapolis from the fall of 1933 until March 22, 1935. While the evidence is conflicting, it sustains the finding that plaintiff was reëm-

ployed in the same capacity and to do the same kind of work at the same school. She was not reëmployed merely as a substitute. The work which plaintiff did after she was reëmployed constituted her a teacher within the meaning of § 1 of the teachers tenure act, which provides that "the term 'teacher' shall include every person regularly employed, * * * to give instructions in a classroom * * *." Plaintiff was reëmployed within the meaning of the teachers tenure act and acquired tenure rights. She could be discharged then only in the manner provided by the statute. It is admitted that she was not given a hearing and that she was discharged peremptorily. Such discharge was wrongful.

■ It is urged that the reëmployment is void because plaintiff was not reëmployed by the school board but only by the superintendent, who had no authority to reëmploy her. It is not necessary at this time to pass upon the authority of the superintendent. The appointment of plaintiff as a school teacher by the superintendent could be ratified by the board of education. Martin v. Common Sch. Dist. No. 3, 163 Minn. 427, 204 N. W. 320. The evidence shows that defendant ratified the employment. Such ratification may be inferred from the defendant's recognition of plaintiff as a school teacher by receiving her services, paying for the same, and listing her in the manual as a regular teacher. 56 C. J. p. 394, § 323.

■ Finally, appellant claims that the reëmployment of plaintiff is void because not evidenced by a contract in writing, citing 1 Mason Minn. St. 1927, § 2903. By the decision in Oxman v. Independent Sch. Dist. 178 Minn. 422, 227 N. W. 351, the rule is settled that the requirement of § 2903 that a teacher's contract be in writing does not apply to a teacher entitled to the benefit of the tenure act. Sutton v. Board of Education, 197 Minn. 125, 130, 266 N. W. 447, relied on by defendant, does not overrule or modify the Oxman case. That case involved a dispute over the amount of the teacher's salary and held that because the teacher had not entered into a formal yearly contract fixing the salary to be paid he could not recover the amount of salary claimed under a salary schedule because "all parties understood that * * * yearly contracts fixed the yearly salaries defendant agreed to pay and not

the salary schedule * * *." The distinction between the Sutton case and the instant case is pointed out at page 128 of the opinion in 197 Minn.:

"Counsel cites Oxman v. Independent Sch. Dist. 178 Minn. 422, 227 N. W. 351, as settling that no annual contract is needed between defendant and its permanent teachers. That case did not involve the amount of the teacher's salary; it was for the wrongful refusal to allow a permanent teacher to earn her salary."

The rule of the Oxman case that when a teacher has been reëmployed after completion of the probationary period no written contract is necessary to entitle her to protection from wrongful discharge still applies. A different case is presented if a teacher claims a certain salary without a written contract to evidence the amount when the established practice between the school board and the teacher has been to have a written contract fixing the salary. In the present case it is admitted that a salary schedule fixes the salaries paid to teachers, and there is no dispute as to the amount of salary plaintiff is to receive. Hence the Sutton case is not in point.

The order is affirmed.

