## CAROLYN HOSFORD v. BOARD OF EDUCATION OF CITY OF MINNEAPOLIS.[1]

June 17, 1938.

No. 31,696.

[1]Reported in 280 N. W. 859.

*Oscar Hallam* and *Herbert E. Wolner,* for appellant.

*R. S. Wiggin,* City Attorney, and *Palmer B. Rasmusson,* Assistant City Attorney, for respondent.

HOLT, JUSTICE.

After the decision of defendant's appeal from the order denying it a new trial in 201 Minn. 1, 275 N. W. 81, plaintiff moved to amend the conclusions of law. The court amended, allowing a recovery of $33 additional as for salary, and correcting the computation of interest as to the monthly payments plaintiff would have received had she not been discharged. Upon the findings so amended, plaintiff entered judgment and took this appeal. The findings of fact show that at the time of her discharge $54.44 of her salary was unpaid, the balance of recovery allowed was the salary she would have earned had she been permitted to continue as a teacher. The occasion for plaintiff's motion to amend and this appeal appears to be this sentence in our former decision [201 Minn. 9]: "In the present case it is admitted that a salary schedule fixes the salaries paid to teachers, and there is no dispute as to the amount of salary plaintiff is to receive." The court in making that statement was distinguishing the point at issue on that appeal from the one in Oxman v. Independent School Dist. 178 Minn. 422, 227 N. W. 351, and in Sutton v. Board of Education, 197 Minn. 125, 266 N. W. 447. In the Oxman case the claim was that there was no written contract of employment, although plaintiff had signed and delivered to the board the reëmployment contract it had sent her, and that the tenure act did not apply. It was held that the act did apply and that a written contract as to salary was not

mandatory. In the Sutton case the point was that the board was not concluded by any salary schedule adopted prior to the enactment of the teachers tenure law but that it is for the board to fix the salary for each school year, and the board had so fixed the same for the period involved in Sutton's suit, and he had been paid the amount fixed.

Since plaintiff's motion was to amend only the conclusion of law, she cannot recover more than the findings of fact warrant unless facts are admitted in the pleadings which, together with those found, required the conclusion of law to be amended. The gist of the action is damages for wrongful discharge, the allegation being that she was discharged March 22, 1935, and had been ready and willing to teach up to the time the action was brought. Then there is an allegation as to a salary schedule fixed by "the ordinances, rules and regulations of defendant" applicable to teachers of the position and experience of plaintiff. Defendant's answer admitted the schedule set out, but specifically denied that said various rates were applicable to plaintiff or that she was entitled to any benefits by virtue of said salary schedule. There is, therefore, no admission in the pleadings which, added to the facts found, required the conclusion of law to be amended.

Furthermore, the record shows that the matter litigated was solely whether plaintiff had acquired the standing of a teacher in the public schools of Minneapolis so that the teachers tenure act [1 Mason Minn. St. 1927, §§ 2935-1 to 2935-14] prevented defendant from dispensing with her services except for cause after a hearing. Plaintiff's counsel in the trial stated: "It seems to me we are trying just one proposition here, and that is the question of whether Miss Hosford is under tenure, whether she is entitled to the benefits of the tenure law." And later: "I understand that is the agreement and that is what she was paid, $190 a month. That was her contract." It also appears from the record without dispute that defendant employs some 20 teachers designated as assigned or long-call substitutes; that as to these their pay is fixed by agreement with the superintendent. The salary for regular teachers is deter-

mined each year by defendant and not by the superintendent. Plaintiff did resign, and her resignation was accepted by defendant; but because of her reëmployment as a teacher we held, on the former appeal, that she came under the tenure act, and hence her dismissal without a hearing was ineffectual. The tenure act also secures a teacher against demotion except for cause after a hearing. But this certainly does not prevent a demotion at the request of or with the consent of the teacher. On September 7, 1933, plaintiff filled in and signed exhibit J, an application for employment as a substitute teacher in the public schools of Minneapolis. The salary agreed upon between her and the superintendent was $5 a day for the first 40 days; then, on her plea that it was insufficient for her needs, it was raised to $5.50 per day. This sum was paid and accepted every month without objection or any claim that she had not been heard before demotion. And about the end of the school year 1933-1934 there was another agreement as to her compensation as a substitute teacher at $190 per month; for, under date of June 21, 1934, she wrote the superintendent as follows: "I wish to say that I am very grateful to you for the offer of $190 per month (subject to cuts that the other teachers are taking). For business reasons I find I need this summer a printed or written agreement or contract or something that I can use in business, and would greatly appreciate it if you would be so kind as to have it made out today or as soon as possible." Dated the next day a letter was sent her by the superintendent saying: "In accordance with our recent interview, I am offering you a basal salary of $190 a month for the semester beginning September 10, 1934." She was paid on that basis every month thereafter, and it was accepted without objection. It is plain that the trial court concluded, as did plaintiff's counsel, as above stated, that the compensation agreed upon between her and the superintendent was a binding contract. That should settle the matter as to payment in full for all teaching done up to her dismissal, except the $54.44 referred to. And subsequent to such dismissal, the $190 a month agreed upon must govern her damages for the period which she was not permitted to teach.

That plaintiff voluntarily and deliberately accepted the demotion to substitute teacher appears from the situation. But, as indicated, plaintiff did not move for a new trial nor for the modification or amendment of any finding of fact. And surely the findings of fact 6, 7, and 8 negative that there is anything due and unpaid plaintiff on her agreed salary prior to June 22, 1934.

In addition, we may add that the record does not justify any further recovery than contained in the judgment appealed from. From the evidence no other conclusion can be justly drawn than that plaintiff voluntarily and deliberately accepted the demotion to the position of substitute teacher. She knew her teaching as probationer was unsatisfactory. It had been so at the end of her second year, and she could only continue on condition that she made good. She knew that neither her principals nor the superintendent were satisfied with her work at the end of the third probationary period. What more natural, in that situation, than that plaintiff would gladly accept a demotion, which she did by her application, exhibit J, for the position of substitute teacher.

The record is convincing that neither defendant nor its superintendent in dealing with plaintiff had any intention of evading the teachers tenure act. Everything done was to help plaintiff to overcome her inefficiency as a teacher. Different kinds of work and different principals were tried in order to see whether a change might be an aid to her. She was given the utmost consideration. Advance payments of salary were made during her substitute work. She knew that she held the position of a substitute and took advantage of that fact by withdrawing the money paid into the pension fund. Only those who cease to teach as regular teachers may so withdraw such money. She knew that from the monthly pay check of the regular teachers the defendant deducted the amount such teachers must contribute to the pension fund, and that no amount was deducted for the pension fund from her monthly pay checks while a substitute teacher.

The mistake the superintendent and defendant made, if any, was in extending to plaintiff too much kindness and consideration in an

effort to help her along in the hope that she might overcome her failings as a teacher and be able to continue her work. She has taken advantage of the kindness and indulgence shown her, to defendant's damage, to the full extent the law permits. She should not be allowed to go further.

The judgment is affirmed.

LORING, JUSTICE (dissenting).

With all respect for the views of my brethren of the majority, I cannot yield concurrence in the foregoing opinion. A former appeal by the defendant resulted in the opinion in 201 Minn. 1, 275 N. W. 81, where it was held that plaintiff was a teacher entitled to a permanent status under the provisions of L. 1927, c. 36 (1 Mason Minn. St. 1927, §§ 2935-1 to 2935-14, the teachers tenure act). The sole question here involved is the amount that plaintiff is entitled to recover, a question which was not involved in the previous appeal.

The teachers tenure act provides that during the first three years of consecutive employment all teachers in the public schools and cities of the first class shall be deemed to be in a probationary period, during which their annual contracts may or may not be renewed as the school board shall see fit and that during that period the board may discharge or demote a teacher for any of the causes specified in § 6 of the act. During such probationary period the act requires that in case of a discharge or demotion a written statement of the cause of such discharge or demotion shall be given to the teacher by the school board at least 30 days before the removal or demotion shall become effective. The act also provides that after the completion of the probationary period without discharge those teachers reëmployed shall continue in service and hold their respective positions during good behavior and efficient and competent service and shall not be discharged or demoted except for one or more of the causes specified in § 6 of the act after a hearing as specified in § 7.

In the case at bar the plaintiff was employed under written contracts for three full school years commencing in September, 1930,

and terminating in June, 1933, and was not discharged or demoted during such probationary period but was reëmployed for the school year 1933-1934 and for 1934-1935 to the time of her discharge on March 22 of that year. During the year 1933-1934 she did the same work that she had done in the previous year while she was still on probation, but was designated by the superintendent as a "substitute" teacher and paid only $5 a day for the first 40 days and thereafter was paid at the rate of $5.50 per day. The salaries of regular teachers in Minneapolis are fixed by a uniform graduated salary schedule by the terms of which she was drawing $182.50 per month after January 1, 1933. She was given no notice of demotion at the end of her probationary period, and under the salary schedule applicable to all teachers of her rank she was entitled to $182.50 per month until January 1, 1935, when she was entitled to another raise, subject of course to the reduction made on the salaries of all teachers of her rank due to the lack of public funds. As I read the record, the trial court should award her compensation on that basis unless her conduct in accepting the lower pay amounted to a waiver of her right. Neither the school board nor the superintendent had the power arbitrarily to demote the plaintiff to a lower rate of pay. The statute requires written notice of the cause of such demotion. None was given the plaintiff. Apparently from this record there was no conscious purpose on the part of the defendant or its superintendent to evade the tenure act. Doubtless he acted in good faith in the assumption that the act did not apply. This court has held otherwise, and the majority opinion does not reverse the theory of that opinion but only its practical application to the case at bar. I do not discover anything in the findings of fact relied upon to support the majority opinion which prevents the case from being considered on its merits. The tenor of the findings mentioned by the majority is such that they amount to conclusions of law rather than findings of fact. Because the defendant may have been overindulgent toward plaintiff does not change the legal aspects of the case or justify this court in so effectively sign-boarding the road to a practicable way of evading the tenure act. Plain-

tiff's employment being continued into the permanent tenure status without demotion as provided by the statute, the superintendent's action was, in the eyes of the tenure act, illegal and discriminatory as between the plaintiff and other teachers in the same situation. The policy of the teachers tenure act is to protect the teachers against arbitrary and discriminatory demotions or reductions in their pay. To permit the arrangement used in this case to become effective through an alleged waiver by the plaintiff would be to circumvent the public policy involved in the act and to thwart the very purpose of the law. In the opinion in McSherry v. City of St. Paul, 202 Minn. 102, 106, 277 N. W. 541, 543, Mr. Justice Olson comprehensively reviewed the history and purposes of the teachers tenure law. When a waiver thwarts the public policy of a law it may not be availed of as a defense. Heim v. American Alliance Ins. Co. 147 Minn. 283, 289, 180 N. W. 225, 1022. Moreover, where, as in this case, the parties are not on an equal footing, it would be unjust to sustain a waiver. Obviously plaintiff was ignorant of her rights under the teachers tenure act. I assume that defendant was likewise ignorant of those rights. Naturally she would suppose that the superintendent knew the law, and probably it never occurred to her to question the legality of his actions. Had she known her rights she of course would have stood upon them. I need not here repeat what Mr. Justice Stone, speaking for this court, said in Peterson v. First Nat. Bank, 162 Minn. 369, 203 N. W. 53, 42 A. L. R. 1185, in regard to a mistake of law. As stated in 10 R. C. L. p. 308, § 51:

"But where a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, or estates, and enters into some transaction, the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests, or estates, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact."

I think the case should be remanded to the trial court with directions to modify its findings and order for judgment and enter judgment in conformity with the views herein expressed.

MR. JUSTICE PETERSON concurs in the dissent of Mr. Justice Loring.