Kevin M. WELLS and George Jon Lippincott, Appellants (Plaintiffs),

v.

BOARD OF TRUSTEES OF LARAMIE COUNTY SCHOOL DISTRICT NO. 1; Robert Myers, individually and in his official capacity as Superintendent, Appellees (Defendants).

No. 99–99.

Supreme Court of Wyoming.

April 10, 2000.

Representing Appellants: Patrick E. Hacker of Patrick E. Hacker, P.C., Cheyenne, WY. Argument by Mr. Hacker.

Representing Appellees: Stuart R. Day and Scott W. Skavdahl of Williams, Porter, Day & Neville, P.C., Casper, Wyoming. Argument by Mr. Day.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

LEHMAN, Chief Justice.

The central issue in this appeal is whether a school district is bound by the contracts that it entered into with teachers, where those contracts were not entirely in conformance with the school district's salary schedule. Appellants Kevin M. Wells and George Jon Lippincott assert claims of breach of contract, equitable estoppel, and promissory estoppel against appellee Board of Trustees of Laramie County School District No. 1 (Board). The district court granted summary judgment to the Board. We hold that the district court misapplied the applicable law and that there are genuine issues of material fact as to whether the Board was bound by the contracts. We, therefore, reverse and remand.

### ISSUES

Wells and Lippincott offer these issues for review:

1. Should school districts be held to a lesser standard of honesty, competence and responsibility in their business dealings with their employees than are private employers?

2. Can a school district waive a policy adopted for the benefit of the district to govern internal operations?

3. Does the doctrine of estoppel operate against governmental entities when the entity acts in a business or proprietary capacity or where it does not relate to governmental functions?

4. Is a governmental employee who acts outside the scope of his authority in making representations and promises to governmental employees personally liable?

5. Are there material issues of fact which would preclude summary judgment?

In response, the Board poses these issues:

[1.] Did the district court properly find that Board of Trustees for Laramie County School District No. 1 was bound by the terms of the Negotiated Agreement, entered into with the Cheyenne Teachers Education Association and the lawfully adopted, promulgated and published Laramie County School District No. 1 Policy and Administrative Regulations governing the calculation of teacher compensation?

[2.] Did the district court properly find that the annual salary amounts to be paid to Plaintiffs were void *ab initio* and unenforceable where those salaries were erroneously calculated contrary to the terms of the Negotiated Agreement and School District Policy and Regulations governing [the] calculation of Teacher's compensation?

[3.] Is a school district's policy, regulations and terms of the Negotiated Agreement with all certified classroom teachers subject to waiver where a teacher's salary is erroneously calculated?

[4.] Did the District Court properly find that based upon the undisputed facts of this case as a matter of law Plaintiffs could not assert a claim based upon promissory estoppel?

[5.] Did the district court properly find that Plaintiffs could not assert individual claims against School District Administrators?

## FACTS

Wells and Lippincott are continuing contract teachers[1] in Laramie County School District No. 1 (the District). The Board establishes teachers' salaries pursuant to a schedule agreed upon by the District and the Cheyenne Teachers Education Association (CTEA), the union representing the District's teachers. The schedule determines a teacher's salary based on the individual's level of education and years of experience.

In August 1992, the District offered Wells a teaching position at the lowest pay level, which he declined. Several days later, the District's Human Resources Director, Richard Wiederspahn, offered Wells the same position at a pay level higher than he would have been eligible for, if an exacting construction of the District policy and the union agreement had been applied. Wells accepted the offer and has received subsequent pay increases based on his initial salary and length of service. In 1996, after teaching in the District for a number of years, Lippincott requested a review of his salary classification and an exemption from a District policy to move him into a higher pay grade. District Superintendent Robert Myers granted the exemption, which resulted in a pay raise for Lippincott. Both teachers committed to teach in the District for the 1997–98 school year.

In September 1997, after the school year had begun, the Board met and determined that Wells' and Lippincott's salary classifications were higher than authorized. It notified both teachers that it would immediately reduce their salaries. Wells and Lippincott filed suit in the district court to prevent the salary reductions. Their complaint asserted causes of action for breach of contract, prom-

---

1. A continuing contract teacher is one "who has been employed by the same school district in the state of Wyoming for a period of three (3) consecutive school years, and has had his contract renewed for a fourth consecutive school year." Wyo. Stat. Ann. § 21–7–102(a)(ii)(A) (Michie 1997).

issory estoppel, breach of the covenant of good faith and fair dealing, and deprivation of due process. Wells and Lippincott later sought to amend their complaint by adding Richard Wiederspahn as a defendant and spelling out their claims against Robert Myers in greater detail. The Board moved for summary judgment on all claims, which the district court granted. The court held Wells' and Lippincott's contracts were void to the extent they varied from District policy, and the teachers were not justified in relying on them. The court also denied the plaintiffs' motion to amend. Having found their claims meritless, it reasoned the amendments would "unnecessarily delay the appeal process." Wells and Lippincott timely appealed that judgment.

### STANDARD OF REVIEW

In reviewing a trial court's entry of summary judgment, we examine the record in the light most favorable to the nonmoving party, giving that party all reasonable inferences that can fairly be drawn from the record. Summary judgment is proper only when no genuine issues of material fact exist and the prevailing party is entitled to judgment as a matter of law. A genuine issue of material fact is a disputed fact that, if proven, would establish or refute an essential element of a cause of action or a defense raised by the parties. For a summary judgment motion to be successful, the movant must make a prima facie showing that no genuine issue of material fact exists. The burden thereafter shifts to the opposing party to demonstrate the existence of a genuine issue of matter fact. *Gordon v. Spectrum, Inc.*, 981 P.2d 488, 491–92 (Wyo.1999) (and cases cited therein). Moreover, this court evaluates the propriety of summary judgment using the same standards and materials used by the district court, affording no deference to the district court's decision on issues of law. A grant of summary judgment may be affirmed on any proper legal grounds supported by the record. *Patel v. Khan*, 970 P.2d 836, 838 (Wyo.1998).

### DISCUSSION

■ At the outset, it is significant that we recognize that the licensing, hiring, firing, tenuring, promoting, adjusting of salaries, and other aspects of the employment of teachers is a very structured process which involves statutes (*e.g.*, Wyo. Stat. Ann. §§ 21–2–802, 21–3–111(a)(vi)(C); 21–7–110; 21–7–102(a)(ii)), rules and regulations adopted by school boards, and agreements negotiated between school boards and associations representing teachers. See 2 James A. Rapp, *Education Law*, § 6.05[4][b] (1999). We also note that this is an area of law where there has been considerable stability over time. Each of these elements is significant in the resolution of disputes which arise in this setting. However, generally applicable principles of law, including general contract principles, as well as common sense, continue to apply even though the process is highly structured. 2 James A. Rapp, *Education Law*, § 6.05[4][e] ("The law governing contract formalities required of employment contracts in the educational setting are essentially the same as applied in other contexts to private or public entities.").

In a proper case, a "board of education may ratify a contract or be estopped to deny it, even without formal official action of the board" if the objections to the contract "are technical rather than substantial, going to the formality of execution rather than to the authority to employ." Such a case exists where a board permits a putative employee "to rely upon the contract as valid, to give up other employment, to enter upon the duties of the office and perform services under the contract."

*Id.*

The district court determined that, while the appellants had a legitimate expectation in continued employment, they did not enjoy an expectation of a particular salary. That theory, however, rests on a presumption that appellants' original contracts and the salaries provided by those contracts (as well as increases in salary based on the contracts) were a variance from the Board's salary schedule and were "unauthorized payments." If the premise that the original contracts were "void" fails, then the next conclusion, that appellants were not entitled to salary increases, must also fail. While it may be

true that appellants' had no expectation of a particular increase in salary, under the governing statute they did have an expectation of any salary increases adopted by the Board. Wyo. Stat. Ann. § 21–7–104(a) (Lexis 1999). Likewise, teachers have an expectation that salaries will not be reduced, unless as a part of a general salary reduction applicable to at least 50 percent of the teachers in the district. Wyo. Stat. Ann. § 21–7–111(a)(iii) (Lexis 1999).

The district court also determined that neither equitable estoppel nor promissory estoppel were applicable under the circumstances of this case. The district court based its determination in this regard on the conclusions that the superintendent and the human resources director were not authorized to deviate from the salary schedule, that there was present no exception based upon fraud or "rare circumstances," and that appellants were charged with constructive knowledge of these administrators' lack of authority to vary from the Board's salary schedule. We will note here that the Board is at least equally, if not more so, charged with knowledge of its salary schedule and other pertinent rules and regulations, as well as its authority to deviate from those rules and to ratify contracts entered into by its agents.

The issues relating to estoppel under the circumstances of this case are not, however, that easily answered. In the case, *Bowman v. Lumberton Independent Sch. Dist.*, 801 S.W.2d 883 (Tex.1990), the Supreme Court of Texas held, in a case whose facts bear significant similarity to facts we must deal with here, that fact issues as to estoppel and ratification precluded summary judgment. *Id.*, at 884–88. Continuing, the Texas court noted that "the acts of the agent of the board would not bind the board only if the acts were unauthorized." *Id.*, at 888. That court also recognized that "[w]hen the superintendent and district finance manager as his subordinate issue paychecks and deal with the financial amounts payable under teacher contracts, they do so as agents of the trustees within the scope of their apparent authority." *Id.*, at 888. Further, "[e]stoppel may apply against a school district as to the school superintendent's power to execute an employment contract with a teacher." *Id.*, at 888. Continuing, the court recognized, "[While] estoppel cannot be used to create a new power or enlarge one already in existence, it may be employed to defend against mere irregularities in the doing of a thing in controversy where the power was present to do so." *Id.*, at 889 (quoting *El Paso County v. City of El Paso*, 357 S.W.2d 783, 789 (Tex.Civ.App.El Paso 1962, no writ)). The *Bowman* case was relied upon, along with other authority, by 2 James A. Rapp, *Education Law*, § 6.05[7][b], fn.231, for the proposition that: "[W]here salaries are fixed above the minimums, the board's discretion to reduce salaries even in excess of the minimums may be limited."

 Ratification by the Board presents an even more significant issue. A contract of a teacher, which may be deemed unenforceable because of lack of authority or regularity in the making of it, may be ratified by those having the authority to do so. Ratification is equivalent to a full compliance with the necessary formalities and renders the contract valid from its inception. *Holdridge v. Board of Education of Keenesburg RE–3*, 879 P.2d 448, 450 (Colo.App.1994); *Lommasson v. Sch. Dist. No. 1, Multnomah County*, 201 Or. 71, 261 P.2d 860, 866–68 (1953), (opinion withdrawn on rehearing, 201 Or. 71, 267 P.2d 1105, 1110 (1954), but cleaving "to that part of the earlier opinion ... which relates to ... the ratification of teacher contracts."); *see also Andrews v. Union Parish Sch. Bd.*, 184 So. 574, 577–78 (La.App.1938); *Hosford v. Board of Education of City of Minneapolis*, 201 Minn. 1, 275 N.W. 81, 84 (1937); *Day v. Sch. Dist. No. 21 of Granite County*, 98 Mont. 207, 38 P.2d 595, 597 (1934); *Smith v. School Dist. Tp. of Grove, Adair County*, 216 Iowa 1047, 250 N.W. 126, 127–28 (1933); *McLaughlin v. Board of Education of Fordson Sch. Dist. of City of Dearborn*, 255 Mich. 667, 239 N.W. 374, 376 (1931); 78 C.J.S. *Schools and School Districts* § 217, p.372 (1995); 1 James A. Rapp, *Education Law*, § 4.02[5] (1999). As an illustration of this principle, in their treatise on this subject, Robert R. Hamilton and E. Edmund Reutter, Jr., *Legal Aspects of School Board Operation*, p.100 (1958) assert:

Another illustration is the situation in which the superintendent of schools purports to enter into a teaching contract with a teacher. Since only the board can enter into formal contracts, the superintendent has thus exceeded his authority. However, if the board subsequently ratifies and validates the action of the superintendent, the contract is as valid as if it had been entered into between the teacher and the board in the first instance.

It is also clear that a school board's authority to contract with teachers may be delegated:

Thus, where the law makes it the duty of a board to employ teachers, the board may delegate to the superintendent or to a committee the authority to ascertain proper persons to be employed and even to draw up tentative contracts, but the contracts must be ratified by the board itself, or they will not be valid. Where, on the other hand, all terms of a contract have been definitely agreed on by the board at a legal meeting, the ministerial duty of executing the contract or reducing it to the proper form may be delegated to an agent.

Newton Edwards, *The Courts and the Public Schools*, pp.168–69 (3 rd ed.1971).

█ Although decided in a different context, pertinent Wyoming authority supports the conclusions set out above. Appellants contend they had binding contracts with the District, averring the District could not modify their contracts without written notice on or before May 15. In support of these contentions, appellants cite Wyo. Stat. Ann. §§ 21–7–106 and 21–7–107 (Lexis 1999). The district court dispensed with appellants' breach of contract claim by finding the contracts were void from their inception because they did not comply with the approved salary schedule. The court reasoned that the administrators had no authority to deviate from the approved schedule, and appellants were charged with knowledge of that fact. As noted above, we find the pertinent authorities to be to the contrary.

By statute, the authority to determine teachers' salaries is vested in the Board. Wyo. Stat. Ann. § 21–3–111(a)(vi)(C) (Michie 1997). The Board has exercised that authority by establishing, in negotiations with the CTEA, a salary schedule for teachers. The Board argues that not only were its administrators not authorized to deviate from the salary schedule, but the Board itself could not do so. As set out more fully above, we are not persuaded by those arguments. Although the administrators who granted variances from the salary schedule to Wells and Lippincott may not have had specific authority from the Board to do so, the Board approved, honored, and renewed the contracts. In so doing, the Board arguably ratified those "unauthorized" acts. *See Lahnston v. Second Chance Ranch Co.*, 968 P.2d 32, 36 (Wyo.1998) ("Implied ratification of a previously unauthorized act may result from 1) accepting and retaining the benefits of the act, 2) silence, acquiescence, or failure to repudiate ...").

█ The Board seeks to avoid performance by claiming the contracts violated its own policies and its negotiated agreement with the CTEA. We hold that inconsistency with District regulations, by itself, does not render the contracts invalid. The regulations are internal procedures adopted for the benefit of the District, rather than for the protection of other parties, and may therefore be waived by the District. *See Roberts v. Lincoln County Sch. Dist. No. One*, 676 P.2d 577, 580 (Wyo.1984). The CTEA agreement is similarly unavailing for the Board here. The facts indicate that the CTEA, the exclusive bargaining agent for the District's teachers, was willing to "work out an accommodation" so appellants' salaries would not be decreased. If the CTEA does not insist on strict enforcement, we will not allow the Board to invoke the agreement to save itself, from itself.

█ Wells and Lippincott next argued the Board should be estopped from avoiding performance because appellants had relied, to their detriment, on the representations in their contracts. The district court rejected the equitable estoppel argument, reasoning that the government may be equitably estopped only in "rare and unusual circumstances" and "may not be estopped for the unauthorized acts or errors of its officers or

employees." The district court cited the following declarations from this court:

> Equitable estoppel should not be invoked against a government or public agency functioning in its governmental capacity, except in rare and unusual circumstances and may not be invoked where it would serve to defeat the effective operation of a policy adopted to protect the public.

*Big Piney Oil & Gas Co. v. Wyoming Oil and Gas Conservation Comm'n,* 715 P.2d 557, 560 (Wyo.1986).

> Equitable estoppel does not apply to governmental or sovereign functions, especially where it would defeat the public interest. [Furthermore,] the state may not be estopped for the unauthorized acts or errors of its officers or employees.

*State Highway Comm'n v. Sheridan–Johnson Rural Electrification Ass'n,* 784 P.2d 588, 592 (Wyo.1989) (citation omitted).

■ The court's application of *Big Piney* and *Sheridan–Johnson,* however, ignores the distinction between an "agency functioning in its governmental capacity," and an agency functioning as an employer or in a proprietary capacity. We have consistently recognized that estoppel is available against a governmental agency for the unintentional, misleading statement of its representative, when the agency is functioning in a proprietary capacity. *State ex rel. Workers' Compensation Div. v. Barker,* 978 P.2d 1156, 1159–61 (Wyo.1999); *Bauer v. State ex rel. Worker's Compensation Div.,* 695 P.2d 1048, 1053 (Wyo.1985); *Seaman v. Big Horn Canal Ass'n,* 29 Wyo. 391, 397–99, 213 P. 938, 940 (1923). If the district court's holding were accepted at face value, there could never be estoppel against any governmental agency. Such a result would be clearly at odds with past rulings of this court. We hold that the district court erred in determining, as a matter of law, that the Board could not be equitably estopped where the material facts necessary to reach that conclusion are in dispute.

The district court's grant of summary judgment is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.