LONG *v.* WELLS, superintendent, *et al.*

No. 12438.  September 15, 1938.

604

606

*Helen Douglas Mankin, Jack C. Savage,* and *Carl N. & Frank T. Davie,* for plaintiff.

*Sutherland, Tuttle & Brennan,* for defendants.

ATKINSON, Presiding Justice. The civil-service act in question (Ga. L. 1937, p. 879) is as follows: "An act to provide for civil service for teachers and employees of the public-school systems of all counties in the State of Georgia having a population in excess of 200,000; to provide for establishment of rules and regulations for the employment and discharge of such teachers and employees; and for other purposes.

"Be it enacted by the General Assembly of the State of Georgia, and it is hereby enacted by the authority of the same:

"Section 1. In all counties of this State which have a population in excess of 200,000 under the last or any future census of the United States, all teachers and other employees employed by the board of education of such counties shall serve during good behavior and efficient service, under such rules and regulations as may be established by the board of education.

"Section 2. All teachers, supervisors, and principals, as well as other employees of such county public-school systems who are in the employ of such county boards of education at the time this act becomes effective, and who shall have been so employed for a

total period of as long as three years, . . shall be automatically reappointed . . and no person shall be discharged from such position or refused reappointment except for disability, inefficiency, insubordination, or moral turpitude; Provided, however, that nothing herein contained shall require the board of education of any such county to continue any person in the same position or capacity, but, subject to the other provisions hereof, it shall require only that each teacher, supervisor, or principal shall be reappointed to one of such positions; Provided, however, that no such employee shall be transferred from one such position to another against his wishes, except to promote the efficiency of the county-school system.

"Section 3. The boards of education of such counties shall adopt such rules and regulations for the persons who are under this act placed under civil service, . . so that they shall serve during good behavior and efficient service, and so that they shall not be discharged without notice being given to them, charges preferred, and opportunity to be heard. No employee shall be discriminated against for the exercise of any constitutional right.

"Section 4. The provisions of this act shall become effective . . on July 1, 1937.

"Section 5. Any and all laws and parts of laws in conflict with this act are hereby repealed."

■ ■ This is the first legislation in this State regulatory of civil service as relates to teachers in public schools of counties, employed by county boards of education, though there are such statutes which refer to other kinds of employment in municipalities, as applied in *City of Macon* v. *Bunch,* 156 *Ga.* 27 (118 S. E. 769); *Blount* v. *Parham,* 184 *Ga.* 515 (191 S. E. 911); *McAfee* v. *Board of Firemasters of Atlanta,* 186 *Ga.* 262 (197 S. E. 802); *Winn* v. *Adams,* 185 *Ga.* 173 (194 S. E. 185) (referring to county police). In 11 C. J. 814, it is said of civil service: "In general it is confined to functions in the great administrative departments of State. In its enlarged sense the term means all service rendered to and paid for by the State or nation, or by political subdivisions thereof, other than that pertaining to naval or military affairs." The counties are subdivisions of the State, and the boards of education are administrative bodies of the counties in which they exist; and consequently employment of teachers

to be paid by the county board out of the public-school funds comes within the provision of civil service referred to in the act and its regulatory provisions. The language of the statute shows it to be of this character, and manifests a purpose to protect competent and qualified teachers of the public schools of the counties in the security of their positions, thus accomplishing the dual object of security of the teachers in their positions and benefit to the public resulting from placing the tenure of positions on demonstrated qualification and merit. The first section of the statute provides that all teachers "shall serve during good behavior and efficient service, under such rules and regulations as may be established by the board of education." This is followed by the language of section 2, which says that "all teachers . . who are in the employ of such county boards of education at the time this act becomes effective, and who shall have been so employed for a total period of as long as three years, . . shall be automatically reappointed, . . and no person shall be discharged from such position or refused reappointment except for disability, inefficiency, insubordination, or moral turpitude." This is augmented by section 3, which declares that rules shall be adopted for "persons who are under this act placed under civil service, . . so that they shall serve during good behavior and efficient service, and so that they shall not be discharged without notice being given to them, charges preferred, and opportunity to be heard. No employee shall be discriminated against for the exercise of any constitutional right." In section 4 it is declared that the "act shall become effective . . on July 1, 1937."

It will be perceived that the quoted portion of section 2 of the act does not, as in some statutes of other States, create a so-called probative period after original appointment of a teacher, to test qualifications before becoming entitled to automatic reappointment or continued tenure of position; but the right to automatic reappointment, or continuance in tenure of position, is based on merit demonstrated by past service of the teacher, under employment of the board of education for the prescribed time. The act contemplates that a teacher who has for the prescribed time in the past demonstrated to the board of education his qualifications as set forth is competent, and should have the protection afforded by its provisions. This competency is the dominant thought indicating

the real legislative intent. The subject of the act has relation to management of the public schools. The natural and reasonable implication is that "years" contemplated "school years," which need not necessarily include "calendar years" or begin on July first. Teachers who are in the "employ" of county boards of education may be such as are employed consecutively each year, whether school year or calendar year. Where the employment has been for the successive school years, showing an avocation annexed to the school, the natural thought of the person during the interval between the end of one school year and the beginning of the next (or the commonly called vacation period) is that he is a teacher of the school. The teacher and the board of education may mutually contemplate the employment to continue during such vacation period. During such period the teacher may render actual service of teaching in the school by verbal agreement with the board of education, whereby the teaching is in what is called a "summer school" ancillary to the regular school, on the basis of salary paid in part from tuition supplied by the pupils and in part from the public-school funds. Where that is done, the natural thought is again that this person is a teacher in the school. A teacher might be employed by the board of education for one pay or another, or without pay. If so employed, he would in either event be thought of as a teacher employed in the school. All the foregoing and the subject with which the legislature was dealing was naturally in the legislative mind, and should be considered in construing the act as a whole, and particularly the language "all teachers . . who are in the employ of such county boards of education at the time this act becomes effective." It is urged that the quoted phrase means employed under a legal contract in writing, under the Code, § 32-913 (applied in *Orr* v. *Riley,* 160 *Ga.* 480, 128 S. E. 669; *Hill* v. *Conner,* 181 *Ga.* 516, 182 S. E. 911), which provides: "The county boards of education are empowered to employ teachers to serve in the schools under their jurisdiction, and the contracts for said service shall be in writing, signed in duplicate by the teacher on his own behalf, and by the county superintendent of schools on behalf of the board." This section of the Code deals with the quality of contracts of employment of teachers; not with the subject of civil service in relation to teachers, or the time of existence of the contract relation be-

tween teachers and the boards of education. The above-quoted phrase from the civil-service act does not mention the Code section or embody the provisions thereof. It deals with the subject of civil service as relates to teachers employed by the county boards of education. Considering the subject of legislative action, the work of teachers, the practicability of their employment for scholastic years or calendar years, and the probability of serving between terms, the words "employ" and "employed" as used in the quoted phrase were not used in the strict sense as used in the Code section requiring the contracts to be in writing, but should be construed to include teachers of the schools, during intervals between successive school years, who had been previously regularly employed by written contract for a total of three years, although they had not in such interval of time signed a contract for the next ensuing scholastic year.

If the civil-service act should be construed to exclude teachers who on July 1st had not signed contracts for the next ensuing scholastic year, the whole staff of teachers employed before passage of the act could be denied its advantage. Manifestly no such result was intended. The act as a whole should be construed as protecting teachers possessing the prescribed qualifications, and not as excluding teachers possessing them merely because in the interim between one school year and the next they had not signed a contract for the ensuing year when the act went into effect during such interim. In the instant case the board of education, with the civil-service act in mind, regarded Miss Long as a teacher, and re-elected her for the school year 1937-1938. She was notified of her election by letter of June 30, with the statement that a contract would follow. In these circumstances she was in the employment and employed as a teacher within the meaning of the civil-service act on July 1, the date the act went into effect. The contract fixing her salary for the school year, payable $150 monthly, was forwarded on July 30, which she signed and returned. This was all satisfactory to the board of education, except that she appended the note that if certain provisions of the contract were violative of the civil-service act, it was not to be understood that she was assenting to them. That is substantially the cause of controversy. If any part of the contract was violative of the act, such part of course was unenforceable against Miss Long,

and the mere fact that she stated her position with reference thereto would not be cause for denying her status as an employed teacher under the civil-service act, and corresponding right to salary under the contract which she signed. In dealing with a somewhat similar question, the Supreme Court of Minnesota in Oxman v. Independent School District of Duluth, 178 Minn. 422 (227 N. W. 351), expressed the following view: "Section 1 of the act states that the term 'teacher' shall include every person regularly employed, etc. Section 14 reads: 'The period of service rendered by teachers in the districts in which they are employed at the time this act becomes effective shall be considered in computing the probationary period.' Defendant's second position is based on these two sections. It insists that plaintiff did not come within the protection of the tenure act, for the reason that she was not employed by the district when the act became effective, July 2, 1927. This position is not tenable. The school board did not, before July 2, 1927, advise plaintiff that she would not be further employed, but on the contrary notified her that she had been reappointed. She was employed at the time the act became effective, within the meaning of the law, and entitled to the benefit thereof. Reasons readily suggest themselves as to the purpose of the legislature in postponing the going into effect of the act. It is a matter of common knowledge that school terms in cities of the first class close in June." It further appears in the decision that the statute in Minnesota required contracts of employment of teachers to be in writing.

There is nothing in the civil-service act requiring the board of education to maintain salaries of teachers unchangeable in amount for future years. The prayer for mandamus sought to compel payment of salaries at $150 per month to petitioner so long as she should remain a teacher in the school. This would extend beyond the school year of 1937-1938, if she remained a teacher after that year. As to salary for such amount after such period she was not entitled to mandamus. In this respect the case differs from Oxman v. Independent School District, supra, which was quite similar on the main facts, except that was an action at common law for salary already accrued; not mandamus to compel payment of specified salary accrued and to accrue in future years.

■ The judge did not err in denying mandamus absolute in so far as relates to the specified salaries asserted by the petitioner to accrue after the school year 1937-1938, but erred in denying mandamus absolute in so far as relates to payment of the specified salary accrued and to accrue in said school year 1937-1938. It is competent, in mandamus proceedings of this character, to affirm the judgment in part and reverse in part. *Gard* v. *Board of Education of Hart County,* 183 *Ga.* 82 (7) (187 S. E. 109); *Irons* v. *Harrison,* 185 *Ga.* 244 (9) (194 S. E. 749).

*Judgment affirmed in part and reversed in part. All the Justices concur.*