**Barbara JINKS, For Herself and For All Others Similarly Situated**

v.

**Dr. Benjamin E. MAYS et al.**

**Civ. A. No. 13977.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 28, 1971.

Howard Moore, Jr., Peter E. Rind-
skopf, Elizabeth Roediger Rindskopf,
Atlanta, Ga., Jack Greenberg, Conrad K.
Harper, New York City, for plaintiff.

Latimer, Haddon & Stanfield, Atlanta,
Ga., for defendants.

## ORDER

EDENFIELD, District Judge.

Sometime in the Spring of 1970 Mrs.
Barbara Jinks was re-elected by the At-
lanta Board of Education as a "proba-
tionary" teacher for the 1970–71 school
year.  She was offered a contract which
she accepted May 28, 1970.  On July 24,
1970 counsel for Mrs. Jinks wrote to the
principal of the school in which she had
been teaching to inform him that Mrs.
Jinks was pregnant and was looking
forward to rejoining the school faculty
after the birth of her child in October.
Four days later Dr. John W. Letson, Su-
perintendent of the Atlanta Public
Schools, informed counsel for Mrs.
Jinks that as a "probationary" teacher
she was not eligible for maternity leave
and that her employment status would
be listed as "resigned" and so reported
to the Board of Education.

Mrs. Jinks has brought this action seeking, essentially, injunctive and declaratory relief on her own behalf and on behalf of all those similarly situated. She contends that the policy of the Atlanta Board of Education which grants maternity leave to tenured teachers but denies it to untenured teachers is arbitrary and violates the Equal Protection Clause of the Fourteenth Amendment.[1] Such a suit is authorized by 42 U.S.C. § 1983 (1970) and the court finds it has jurisdiction under 28 U.S.C. § 1343(3), (1970). The court will allow this action to be maintained as a class action since the requirements of Rule 23, Federal Rules of Civil Procedure, have been met.

A. *Standing*

At the outset the court must deal with defendants' contention that plaintiff Jinks lacks standing to sue. Defendants claim that when Mrs. Jinks accepted the Board's offer in May, 1970, she knew she was pregnant and knew, therefore, that she would be unable to perform under the contract since "probationary" teachers are not eligible for maternity leave. As a result, say defendants, her contract with the Board was void at its inception and Mrs. Jinks has no standing to sue as a "probationary" teacher. The court does not agree.

As far as the pleadings reveal the Atlanta Board of Education had no regulation in existence at the time Mrs. Jinks accepted her contract explicitly forbidding pregnant untenured teachers from teaching or accepting an offer of the Board to teach.[2] Regulation 6H11f issued by the Board says:

"Although non-tenure teachers are not eligible for maternity leave, they shall comply with the requirements of the policy on maternity."

Since the only "policy on maternity" which has been furnished the court by the pleadings of both sides is the one governing maternity leave, Regulation 6H11f apparently means that untenured teachers should go through the procedure of applying for maternity leave. Written applications for maternity leave should be made at least one month prior to the beginning of such leave, and the leave usually commences at least four months prior to the expected birth of the child. Since the Board does not grant maternity leave to untenured teachers, it is not clear when they are supposed to file their applications. At most Mrs. Jinks was late in applying for the leave she could not get and under the rules of the Board she may have thereby forfeited her non-existent right to return to her job earlier than twelve months after the birth of her child.

The question of standing is one of federal law. It is clear that Mrs. Jinks has such a personal stake in the outcome of this controversy as to assure the concrete adverseness upon which this court depends. Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). She is a proper party to invoke this court's jurisdiction and maintain this lawsuit. Flast v. Cohen, 392 U.S. 83, 100–101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

1. Plaintiff also alleges that this policy violates her First Amendment right to freedom of expression, her Ninth Amendment right to privacy in matters related to marriage, family, and sex, and her Fourteenth Amendment right to due process of law. None of these allegations is sufficiently meritorious to warrant further consideration. In addition, the numerous court cases and decisions of the Equal Employment Opportunity Commission under the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. (1970), which plaintiff cites are inapposite since that

Act does not apply here. 42 U.S.C. §§ 2000e(b), 2000e–1 (1970).

2. The Board has adopted a new regulation, promulgated after the commencement of this lawsuit, which says:

"No teacher should begin a quarter in which the birth of the child is scheduled."

Another new regulation states:

"Although probationary teachers are not eligible for maternity leave, requirements of the maternity leave policy shall apply in determining date of resignation."

## B. *The Merits*

Defendants have apparently assumed, and the court accepts the proposition, that the authority of the Atlanta Board of Education to issue rules and regulations concerning leaves of absence for tenured and untenured teachers flows from "The Public Teacher Tenure Act for Cities over 300,000 Population." 1968 Ga.Laws, p. 3697.[3] That Act classifies all teachers in Atlanta into two groups: tenured teachers—who may be dismissed only for "cause"—and untenured teachers—who are hired on an annual-contract basis. Section 8 of the Act provides, in relevant part:

> "Leaves of absence including, but not limited to, annual, sick, maternity, professional and military leave, shall be established by local Board policy."

Although classification legislation, per se, does not violate the Fourteenth Amendment, the line that is drawn must be rational. Levy v. Louisiana, 391 U.S. 68, 71, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968). Furthermore, the distinctions that result from the classification legislation must bear some relevance to the purpose for which the legislation was enacted. Rinaldi v. Yeager, 384 U.S. 305, 309, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966). In other words, the basis for the policy of the Atlanta Board of Education which grants maternity leave to tenured teachers and denies it to untenured teachers must be rational and must bear some relevance to the purpose of the Tenure Act.

The Teacher Tenure Act has not been construed by other courts as yet, but it would seem that its purpose is the same as the purpose of a similar act, 1937 Ga. Laws, p. 879, which granted tenure to teachers in counties whose population exceeded 200,000. The Georgia Supreme Court said of that Act:

> "[It] manifests a purpose to protect competent and qualified teachers of the public schools of the counties in the security of their positions, thus accomplishing the dual object of security of the teachers in their positions and benefit to the public resulting from placing tenure of positions on demonstrated qualification and merit." Long v. Wells, 186 Ga. 602, 609, 198 S.E. 763, 768 (1938).

The Atlanta Board of Education grants leaves of absence in the following six categories:

(1) professional study leave

(2) bereavement leave

(3) personal illness leave

(4) emergency leave

(5) military service leave

(6) maternity leave

Under the regulations of the Board there is no distinction between tenured teachers and untenured teachers as to professional study leave,[4] bereavement

---

3. The deposition testimony of defendant Letson was that such regulations, including the maternity leave regulation which distinguished tenured from untenured teachers, were in effect long prior to 1968. The authority of the Board to promulgate such rules before the Teacher Tenure Act may have come from the Charter of the City of Atlanta. Atlanta, Ga., Code § 6.1.18 (1965). But since it is the State which authorizes municipal corporations to maintain their school systems, Ga.Const. Art. 8, § 7, ¶ 1 (1945), the *present* authority of the Board to issue such regulations comes from the Teacher Tenure Act. In fact, the editors of the Atlanta Code have now included the Act in the Code. Atlanta, Ga., Code §§ 6.4.1, et seq. (Supp. 18, 1970.)

4. The parties appear to assume that "professional study leave" is available only to tenured teachers. Although that may well be the practice, the pertinent regulation of the Board supplied by both sides in the pleadings states:

> "A professional leave is a leave of absence for professional study which may be approved after three years of satisfactory service upon recommendation of the Superintendent."

Mrs. Jinks completed three years of service but was re-elected to a fourth year on "probationary" status instead of tenure status. Apparently, the Board may extend the "probationary" period for as long as it chooses. For all the court can tell, Mrs. Jinks would be eligible

leave, personal illness leave, emergency leave, or military service leave. The only category in which there is a distinction is maternity leave. Plaintiff asserts that this distinction is arbitrary and capricious, while defendants say it has a rational basis and bears some relevance to the purpose of the Teacher Tenure Act.

Defendants claim that one of the purposes of the Teacher Tenure Act is to provide for the meaningful evaluation of untenured teachers and that if untenured teachers were allowed maternity leave—which they say averages seven months—there would not be sufficient opportunity for such evaluation. But this could not be the rational basis for the maternity leave policy since the Board may extend the probationary period if it desires. Mrs. Jinks, as the court has noted, had already completed her three years on "probationary" status and the Board chose to re-elect her to a fourth year—presumably because she was qualified enough to warrant further evaluation. Moreover, untenured teachers are permitted to go on study leave and the pleadings reveal that a number of untenured teachers have taken such leave for one-year periods. In addition, military leave (without pay) is allowed to untenured teachers who are drafted, and their period of service extends *two* years. In those cases the same "evaluation problem" would apparently arise, yet leave is granted. The court has not been presented with any statistics that might show the number of teachers in these latter categories to be less than the number of untenured teachers who would avail themselves of maternity leave if they could get it.

Defendants next claim that the design of the Teacher Tenure Act is to place untenured teachers on an annual-contract basis for hiring and that if the Board had a policy of granting maternity leave to a teacher hired for one year it would run counter to this design. But this, too, could not be the rational basis for the policy since untenured teachers are eligible for study leave which extends in many cases for a full year or more. Furthermore, no restriction is placed on the duration of sick leave granted to untenured teachers. Finally, as the court has already pointed out, untenured teachers who are drafted may be granted military leave which extends for two years.

A third basis which defendants have asserted for this policy is that the Teacher Tenure act may be interpreted to require the Board of Education to replace within the system those tenured teachers who return from maternity leave. Although presently the Board has been able to do so, if the ranks were augmented by untenured teachers returning from maternity leave the Board might be unable to comply with this statutory duty. Assuming defendants' interpretation of the Act is correct, the granting of maternity leave to untenured teachers would in no way require —nor does plaintiff ask—that untenured teachers be replaced within the system ahead of tenured teachers or at all if there are no available positions. The reason plaintiff wants maternity leave is so she would at least have preference over persons who have never been employed by the Board as teachers. To date, the Board has been able to replace within the system all untenured teachers returning from maternity "resignation." Hence this third argument could not be the rational basis upon which defendants' policy rests.

for "professional study leave" during her fourth year of probationary service.

It is true that the Board grants "special study leave" only to "probationary" teachers and only if they have been awarded a scholarship or fellowship. "Professional study leave" is granted even if the teacher has not been awarded a fellowship or scholarship. Nevertheless, given the express language of the regulation, the court can only conclude that this distinction is based on length of service and not tenure status, and that untenured teachers in the circumstance of Mrs. Jinks are eligible for "professional study leave."

It might be argued that since the Teacher Tenure Act grants local boards full discretion in setting leave policies, those policies need not bear relevance to the Act. Even if the court were to accept such an argument, the Equal Protection Clause would demand that the distinctions drawn by the Board be rational and bear relevance to some overall purpose. The Board does say that for administrative reasons it is necessary that there be a group of teachers to whom extended absences are not available. Otherwise, defendants say, the Board would have to maintain a large reserve of substitute teachers. To the extent this suggests that the Board would need a reserve of substitute teachers to replace untenured teachers who absented themselves on maternity "leave" and does not need a reserve of substitute teachers to replace untenured teachers who absent themselves on maternity "resignation" it is wholly irrational. The fact is that 147 untenured teachers "resigned" in the 1969–1970 school year for maternity reasons and we may presume that their positions were not left vacant.

The court finds that the policy denying maternity leave to untenured teachers is arbitrary. It has no rational basis and bears no relevance to the purpose of the Teacher Tenure Act or to the purpose of the administrative scheme of the Board of Education. Just as defendants grant study leave, bereavement leave, personal illness leave, emergency leave, and military service leave to both tenured and untenured teachers, so, too, must they grant maternity leave to both tenured and untenured teachers.

C. *Back Pay*

In her complaint plaintiff prayed for back pay in case defendants refused to re-employ her on the ground that her position had been filled by a new employee. The court has not been informed by plaintiff that this has occurred and no facts have been presented upon which this court might award back pay. Plaintiff's prayer for back pay will therefore be denied. However, the court will enjoin defendants from refusing to re-employ her if she chooses to resume teaching and there is a vacancy in the system.

For the foregoing reasons the court declares that defendants' arbitrary policy denying maternity leave to untenured teachers violates the Equal Protection Clause of the Fourteenth Amendment and is null and void. The court orders that defendants be and they are hereby permanently enjoined from refusing to grant maternity leave to plaintiff and the class she represents. The court further orders that defendants are enjoined from refusing to re-employ plaintiff Jinks as a teacher should she choose to resume teaching, on condition that there is at such time a vacancy within the school system. Plaintiff's prayer for back pay is denied.

It is so ordered.