THE STATE, EX REL. ROSE, *v.* BOARD OF EDUCATION OF OHIO RURAL SCHOOL DISTRICT. (TWO cases.)

THE STATE, EX REL. CHURCH, *v.* BOARD OF EDUCATION OF OHIO RURAL SCHOOL DISTRICT.

THE STATE, EX REL. DUNCAN, *v.* BOARD OF EDUCATION OF OHIO RURAL SCHOOL DISTRICT.

THE STATE, EX REL. POLLITT, *v.* BOARD OF EDUCATION OF OHIO RURAL SCHOOL DISTRICT.

64

(Nos. 191, 192, 193, 194 and 195—Decided March 6, 1944.)

*Mr. Robert M. Switzer* and *Mr. Perry C. Bailes,* for relators.

*Mr. R. M. Betz,* prosecuting attorney, and *Mr. A. J. Layne,* for respondent.

METCALF, J. These five cases are original actions in mandamus, separately brought by relators, Frances G. Rose, Donald Rose, Emmett W. Church, Mildred Duncan and Margaret E. Pollitt, against the respondent, the Board of Education of Ohio Rural School District in Gallia county, wherein all of the relators are teachers, seeking writs compelling the respondent board to tender and execute the type of contract to which they claim to be entitled under the ''Ohio Teachers' Tenure Act'' (former Sections 7690-1 to 7690-8, General Code, 119 Ohio Laws, 451), passed by the General Assembly of Ohio on May 15, 1941, approved by the Governor on June 2, 1941, and effective September 1, 1941.

This act provides that contracts for the employment of teachers shall be of two types; limited contracts and continuing contracts, and further it makes provision for the type of contract that shall control in districts of under eight hundred pupils relative to beginning teachers and new teachers.

A continuing contract is defined as a contract which shall remain in full force and effect until the teacher resigns, elects to retire or is retired, or until it is terminated or suspended as provided in the act, and such contracts shall be granted only to teachers holding professional, permanent or life certificates. The act further provides (former Section 7690-2, now Section 4842-8 of the General Code) that on or before September 1, 1941, a continuing contract shall be entered into by each board of education with each teacher so certificated who at the time of the passage of the act was completing five or more consecutive years of employment by the board. Others, not having attained continuing contract status elsewhere, in order to be eligible in any school district shall be those teachers qualified as to certification who have taught for at least three years in the district. As to those teachers the act provides:

"Upon the recommendation of the superintendent of schools that a teacher eligible for continuing service status be re-employed, a continuing contract shall be entered into between a board of education and such teacher unless the board by a three-fourths vote of its full membership rejects the superintendent's recommendation." (Section 4842-8, former Section 7690-2, General Code.)

The school district represented by respondent board is one of under eight hundred pupils and in such a district the act sets forth the following contract system that shall control relative to beginning and new teachers:

"a. Beginning teachers * * * shall be hired for one year.

"b. New teachers, who have had at least one year's experience as teachers in other schools, shall be employed * * * for [not] more than five years.

"c. Upon re-employment after the termination of the first contract, the new contract shall be for not less than three years nor more than five years provided that the teacher's educational qualifications have been fulfilled and the teacher's work has been satisfactory.

"d. Upon re-employment after the termination of the second contract, the teacher's contract shall be for five years and subsequent renewal thereof shall be for five year periods, or the board of education may at any time grant a continuing contract." (Section 4842-8, former Section 7690-2, General Code.)

Former Sections 7805-1 to 7805-7, inclusive, of the General Code (now Sections 4857-1 to 4857-7) divide and classify the various types of certificates. A provisional certificate is one valid for four years, a professional certificate is one valid for eight years, and, of course, the terms permanent and life certificate are self-explanatory.

The validity and constitutionality of the "Teachers' Tenure Act" were established by the Supreme Court in the case of *State, ex rel. Bishop,* v. *Board of Education of Mt. Orab Village School Dist.,* 139 Ohio St., 427, 40 N. E. (2d), 913, and as therein enunciated this "court has nothing to do with the policy or wisdom of a statute. That is the exclusive concern of the legislative branch of the government."

It will be observed, for the purpose of clarification, that the 95th General Assembly of Ohio in House Bill No. 217 recodified the school laws of Ohio, amending some of the sections, repealing others and renumbering them all, which act became effective September 16, 1943, prior to the filing of the petitions herein.

In this bill two minor amendments were made affecting former Section 7690-2, now Section 4842-8, as relates to the cases before us, the first being that the three year qualification must be within the last five

years and the second amendment applies to districts of under eight hundred pupils, wherein paragraph "c" is amended so that the new contract upon re-employment of a beginning teacher or new teacher, after the termination of the first contract, shall be for not less than two years nor more than five years. The causes of action on which the respective claims of relators are predicated existed at the time of this amendment and repeal and are not affected thereby, the amendment and repeal not otherwise expressly providing. Section 26, General Code; 37 Ohio Jurisprudence, 430, Sections 180, 181; *State, ex rel. Price, v. Huwe,* 103 Ohio St., 546, 134 N. E., 456.

The five cases are necessarily divided into three classes as respects the relief sought under the provisions of the law.

Frances G. Rose and Donald Rose each hold professional certificates effective September 1, 1942, and September 1, 1941, respectively. Both were completing more than three consecutive years as teachers in the respondent district and were both recommended by the county superintendent of schools as eligible for continuing contract status at the end of the school year 1942-1943. The respondent board of education, without rejecting this recommendation as provided in the act, refused to grant either of these relators a continuing contract and on August 19, 1943, employed Frances G. Rose as a teacher for a term of one year, being for the school term 1943-1944. The same action was taken on September 17, 1943, as to the relator Donald Rose for the same and like period. Both relators entered upon their respective duties, at the commencement of the school term, as teachers in respondent's district and are continuing to teach therein.

The relator Emmett W. Church completed more than three consecutive years as a teacher in respondent's district at the end of the school year 1942-1943

and is the holder of a life elementary certificate effective June 12, 1931. There is no evidence as to the recommendation of the county superintendent of schools as to the relator's eligibility for continuing contract status. The respondent board, however, employed this relator on September 6, 1943, as a teacher for the school year 1943-1944 and pursuant thereto relator entered upon his duties as a teacher. In addition to the three year provision this relator claims that he is entitled to a continuing contract under the proviso affecting those teachers who were completing five or more consecutive years of employment by respondent board at the time of the passage of the "Teachers' Tenure Act." The evidence shows that this relator was completing more than five consecutive years as teacher in respondent district at the time of the passage of the act in 1941. However, the board re-employed him on a one year contract for the school year 1941-1942 and he has been so re-employed each year since to and including the present school year.

The other two cases, Mildred Duncan and Margaret E. Pollitt, constitute the third classification. They come within that provision of the act relative to beginning teachers or new teachers in districts of under eight hundred pupils. Relator Duncan was first employed by respondent board June 5, 1941, as a teacher, never having taught before. She has been re-employed each year since on a one year contract and was so employed for the school year 1943-1944 on August 19, 1943, and entered upon her duties and is teaching pursuant thereto. She is a holder of a provisional certificate valid as of September 1, 1941, and claims she is entitled to a five year limited contract.

Relator Pollitt was first employed on a one year contract for the school year 1942-1943, this contract ending on the 5th day of May, 1943. On September 6, 1943, she was re-employed for the school year 1943-1944 on

a one year contract and entered upon her duties and is teaching thereunder. She holds a provisional certificate valid as of September 1, 1940. The evidence is not clear as to whether she was a beginning teacher or a new teacher but is definite as to her first employment with respondent board. She maintains that she is entitled to a limited contract for not less than three years.

The respondent board filed separate answers to each of the petitions of relators, its defense being common to all the cases. It claims that the teachers have waived their respective rights by accepting one or more limited contracts since September 1, 1941; that they have not taught the required time entitling them to the contracts sought; that they have not shown themselves entitled thereto; and that the respondent board has no authority to grant them the contracts demanded. In addition to the answers an agreed statement was entered in the record and testimony was offered substantiating the facts as herein related.

The Supreme Court in the *Bishop case, supra*, and in affirming the judgment of this court in *State, ex rel. Thurston,* v. *Board of Education of Wheelersburg Rural School Dist.*, 140 Ohio St., 512, 45 N. E. (2d), 604, established that it was mandatory on the part of the respondent here to tender relator Church a continuing contract on September 1, 1941, the effective date of the act, or within a reasonable time thereafter. The respondent board not only refused to do this but on October 6, 1941, by a unanimous vote placed upon the record a blanket resolution rejecting any and all continuing contracts for teachers. Respondent now contends that this rejection applies not only to relator Church but to all the teachers reaching continuing contract status. There may have been some excuse for the board assuming this attitude in opposition to continuing contracts in October of 1941, prior to the decision

of the Supreme Court in the above cases. This court appreciates that until those decisions, there was much confusion generally throughout the school districts of Ohio but that resolution can serve no useful purpose, either then or now, to defeat the provisions of the "Teachers' Tenure Act."

Likewise, when the superintendent made his recommendations, at the end of the school term 1942-1943, that relators Frances G. Rose and Donald Rose were eligible for continuing service status and that they be re-employed, it was mandatory on the part of the board of education to enter into a continuing contract with these two relators unless the board by a three-fourths vote of its full membership rejected the superintendent's recommendations as provided in the act. The superintendent never withdrew his recommendations, did not recommend re-employment under another limited contract and the board did not reject his recommendation but re-employed these two relators without entering into a continuing contract. This action by the board and all the surrounding circumstances indicate that the work of these teachers was satisfactory, that the board desired their re-employment and did so re-employ them but has failed and still refuses to tender them continuing contracts as provided by law.

Relator Duncan, although employed three days after the passage of the act but prior to the effective date thereof, was, as determined by the Supreme Court in the *Bishop case, supra,* a beginning teacher for the school year 1941-1942 in respondent's district and as such upon re-employment after the termination of her first contract she should have been re-employed for not less than three years nor more than five years as provided in paragraph "c" of Section 7690-2, General Code. While it was not mandatory for the board to re-employ her it did so and it seems clear that it was mandatory for the school board to tender her a con-

tract for not less than three years. We can not agree with her claim that because the board ignored the law and granted her another one year contract of re-employment for the school year 1942-1943 that she thereby became eligible for a minimum contract of five years when she was re-employed on the completion of the second school year. The intent of the law at that time was not to compel the board of education to employ a beginning teacher for a minimum of five years, until they had taught at least four years in the district. To follow the argument of this relator would be to circumvent this provision and permit her to obtain a five year contract with only two years of teaching. In the event the teachers' work has been satisfactory and they have the necessary educational qualifications the law gives the board the right to hire them, or did before amendment, for a period of not less than three nor more than five years. This teacher meets the educational qualifications and her work must have been satisfactory since she was re-employed. Therefore, when she was re-employed at the end of her first year she should have been re-employed under that provision wherein the board, in its discretion, could make the contract for not less than three nor more than five years as provided in the law. The minimum contract it could tender and execute was one for three years effective for the school year 1942-1943 and the succeeding two school years.

Relator Pollitt was first employed for the school year 1942-1943 and when she was re-employed on the 6th day of September, 1943, she should have been tendered a contract for not less than three years nor more than five years because, as in the Duncan case, the act of re-employing her is presumptive that her work had been satisfactory in the absence of evidence to the contrary, and the record discloses that she meets the necessary educational qualifications.

Counsel have moved to amend the petitions in the last two cases to conform to the facts proven and this will be granted.

Counsel for respondent strongly urge that, since Section 7691 of the General Code was in force and effect at the time of the employment of the relators, it was lawful to hire them thereunder, ignoring the specific provisions laid down by the Legislature in the "Teachers' Tenure Act." We can not subscribe to this argument for to do so would nullify the "Teachers' Tenure Act" not only relating to those teachers eligible for continuing contract status but to the last two relators who are entitled, as beginning or new teachers, to the type of contract the Legislature has said shall control in districts of under eight hundred pupils. Any contract of employment entered into with these teachers was subject to the requirements of the act. See *State, ex rel. Nobles,* v. *Bienville Parish School Bd., infra.*

After a careful consideration of all the evidence and the law this court is convinced that relators are entitled to the benefit of the provisions of the act in the event they have not waived their statutory rights by accepting and teaching under yearly contracts.

This identical question has not been before the Supreme Court although in the case of *State, ex rel. Ford,* v. *Board of Education of City School Dist. of Cleveland,* 141 Ohio St., 124, 47 N. E. (2d), 223, 145 A. L. R., 1075, a teacher who was entitled to a continuing contract under the first proviso of the act was held to have waived her rights thereto by voluntarily accepting a contract for the balance of the school year and at about the same time tendering her resignation operative at the close of such year, where such resignation was accepted. As pointed out in that case, the principle of law is well established that one is free to waive the rights and privileges which are due him, whether se-

cured by contract, conferred by statute or guaranteed by the Constitution, so long as there is no violation of public policy. 40 Ohio Jurisprudence, 1235, Section 3. A careful reading of that case leads this court to conclude that it was the act of resigning on the part of the teacher that waived her rights and not the acceptance of or the teaching under a one year contract. "Waiver" as used in connection with cases of this type is assumed to import its traditional definition as a voluntary relinquishment of a known right. 40 Ohio Jurisprudence, 1233, Section 2. In the *Ford case* there was dissatisfaction with the teacher's work and there was a voluntary and intentional act done by the teacher in entering into the arrangement to resign and in the resigning that terminated a continuance of her existing status.

In 145 A. L. R., 1079, in the annotation of the *Ford case,* it is said that "It is generally recognized that the voluntary resignation or abandonment of a teaching position constitutes a waiver or relinquishment of a teacher's status or rights under the Teachers' Tenure Laws." Citing *Merman* v. *Calistoga Joint Union High School Dist.* (1936), 5 Cal. (2d), 438, 55 P. (2d), 195.

A resignation by a teacher has been held to waive his or her rights under the "Teachers' Tenure Law" in California, Indiana, Louisiana, New Jersey, Oregon and Wisconsin. For citations see A. L. R., *supra.* But in the same jurisdictions the courts have uniformly held, as pointed out in the same annotation, that "because school systems are invariably maintained upon a short-term basis, the mere making of employment contracts for such terms cannot be construed as a waiver of the status or rights conferred by or acquired under teachers' tenure statutes, being, for the most part, designed for the successful and convenient operation of the schools, and necessary to conform to the school laws."

In the case of *La Shells* v. *Hench* (1929), 98 Cal. App., 6, 276 P., 377, the court held that a permanent tenure teacher did not relinquish any rights which she had previously acquired by entering into yearly contracts with the school authorities which contract was inconsistent with the ''Teachers' Tenure Act.''

In *State, ex rel. Black,* v. *School Commrs.* (1933), 205 Ind., 582, 187 N. E., 392, the court held that a teacher who had taught for the number of years required to establish permanent tenure did not forfeit her rights as a permanent teacher by entering into a new contract in the absence of a clear expression of an intention of the parties to the contrary, and this was true even though the statute provided that the indefinite contract shall remain in force unless succeeded by a new contract, pointing out that to hold otherwise would frustrate the purpose of the statute to establish permanent tenure. Again in the case of *Spice Valley Sch. Twp.* v. *Rizer* (1938), 214 Ind., 528, 15 N. E. (2d), 390, the court held that the execution of two definite contracts, each for a term of one year, after a teacher had acquired tenure rights by teaching for the required five consecutive years, did not abrogate the teacher's permanent indefinite contract. To the same effect is the case of *Stiver, Trustee,* v. *State, ex rel. Kent* (1936), 211 Ind., 370, 1 N. E. (2d), 592, 7 N. E. (2d), 181, which holds that the making of a new contract did not terminate the tenure of a teacher who had taught for more than five consecutive years required to establish a permanent tenure.

The court in *State, ex rel. Nobles,* v. *Bienville Parish School Bd.* (1941), 198 La., 688, 4 So. (2d), 649, held that:

''The Teachers' Tenure Act and the act authorizing school board to employ teachers by the month or by the year are not inconsistent, and any person employed as regular teacher of school enters into school system

and becomes subject to all laws pertaining to teachers, regardless of whether he is hired to teach by the month or by the year, and statutory provisions are read into his contract and form part thereof.''

The court on page 651 of the Southern Reporter used these pertinent words:

''The fact that the school board employed the plaintiff by the year or for a period of a year is of no moment. To conclude otherwise would defeat the purpose of the Teachers' Tenure Act.''

See, also, *Long* v. *Wells* (1938), 186 Ga., 602, 198 S. E., 763.

Further, in the case of *Wesenberg's Appeal* (1943), 346 Pa., 438, 31 A. (2d), 151, the court in construing the school code of Pennsylvania held that a new contract confirming an increase in salary did not amount to the relinquishment of any statutory seniority rights such as would result from a voluntary resignation and rehiring at a later date.

The Supreme Court of Ohio in the case of *Allenbaugh* v. *City of Canton*, 137 Ohio St., 128, 28 N. E. (2d), 354, involving a civil service employee, held that before he ''may waive any right he has as such under the law, in order to establish a waiver the evidence must be sufficient to warrant a court in saying that his intent to waive is unmistakable.'' In the same case the court held that a right conferred by statute need not constantly be asserted in order to be preserved. Measured by this standard no waiver exists in any of the five cases before us.

All the facts and surrounding circumstances in the instant cases indicate there was never any intention on the part of the teachers to relinquish the rights conferred upon them by statute. The acceptance of employment from year to year is not inconsistent with claiming the benefits of the tenure act. There has been no abandonment on the part of the teachers of

the beneficial statutory provisions provided for them and in no way can the respondent board maintain that it has been misled or prejudiced by the teachers teaching under the only contract of employment the board was willing to grant. The board of education created the condition it now complains of as constituting a waiver on the part of the teacher. No benefits have accrued to the teachers herein such as we find in the Ford case, supra.

To hold under the circumstances that these teachers voluntarily waived their statutory rights by accepting employment from year to year would be tantamount to holding that by going ahead and performing their duties as teachers in the schools that they intended thereby to surrender their respective rights under the statute and be forever deprived of its benefits. No such intention can be inferred from the act and conduct of the respective relators in continuing to teach. Much more commendable is such conduct on their part than standing by and refusing to begin the school year until the desired contract was forthcoming.

The Supreme Court in the Bishop case, supra, quoted with approval the remarks of the Supreme Court of Alabama relative to that state's Teachers' Tenure Act in the case of Board of Education of Marshall County v. Baugh, 240 Ala., 391, 199 So., 822, 825, and that quotation is so pertinent here that it merits repetition.

"The very laudable purpose of this act was to insure to the teachers some measure of security in their important work and to free them, at least to a measurable extent from the 'vicissitudes of politics' or the likes or dislikes of those charged with the administration of school affairs.

"Such being the manifest purpose of the act it should be liberally construed in favor of the teachers, who constitute the class designated to be its primary beneficiaries."

It is our conclusion that when the county superintendent of schools recommended that relators Frances G. Rose and Donald Rose, teachers eligible for continuing service status, be re-employed and the respondent board, not having rejected this recommendation by a three-fourths vote of its full membership, re-employed them, it was mandatory on the part of the board to tender and execute a continuing contract and that they are therefore entitled to the respective writs prayed for, which are allowed; that relator Church is and has been entitled to a continuing contract since the effective date of the act under the first proviso thereof and is therefore entitled to the writ prayed for, which is allowed; that relator Duncan is entitled to at least a three year contract effective as of the beginning of the school year 1942-1943, and a writ is allowed accordingly; and that relator Pollitt is entitled to a contract for not less than three years effective as of the beginning of the school year 1943-1944. A writ is allowed as prayed for.

*Writs allowed accordingly.*

McCurdy, P. J., and Gillen, J., concur.