IN RE ORDER MERGING COMMON SCHOOL DISTRICT NO. 8
WITH INDEPENDENT CONSOLIDATED SCHOOL
DISTRICT NO. 1 OF PIPESTONE COUNTY.
BENNETT MELBY v. OLE HELLIE AND OTHERS.

80 N. W. (2d) 849.

February 8, 1957—No. 36,903.

*Raymond N. Wieland,* for appellant.
*Palmer & Rice,* for respondents.

KNUTSON, JUDGE.

This is an appeal from a judgment entered pursuant to an order
of the district court which affirmed an order of the Board of County
Commissioners of Pipestone County in a school merger proceeding.

Common School District No. 8 of Pipestone County consists of about five sections of rural land in Pipestone County. There are 43 or 44 freeholders in the district. At the time of trial there were eight children of school age in the district. It has a relatively old one-room, one-teacher schoolhouse in a fair state of repair. The school was closed from May 1946 until this proceeding was commenced. On January 21, 1955, the school was reopened with two kindergarten children in attendance. Since the school was closed, children of elementary school age have been sent to nearby schools, including Pipestone. For the six years preceding the merger proceedings, all but three of the children in the district have been transported by bus to the grade and high school in Pipestone.

Independent Consolidated School District No. 1 of Pipestone County maintains a full 4-year high school as well as grade schools in Pipestone.

On August 20, 1954, a petition containing 12 signatures, but actually signed by 11 freeholders of district No. 8, was filed with the county board of Pipestone County under M. S. A. 122.09 asking that district No. 8 be merged with Independent Consolidated School District No. 1. On the same date, the county board made its order for a hearing on the petition. On August 21, 24, and 27, a total of six of the signers of the petition filed written withdrawals of their signatures on the petition. The hearing on the petition was held by the county board on September 10, 1954, and, on November 3, 1954, the board made its order granting the petition for merger. An appeal thereafter was taken to the district court, and, after a trial, the court affirmed the order of the county board. This appeal is from a judgment entered pursuant thereto.

Appellant presents the following contentions: (1) That the six signers of the petition who attempted to withdraw their signatures had a right to do so and that thereafter the petition was insufficient to give the county board jurisdiction to act; (2) that district No. 1 had no right to refuse to accept children from district No. 8 without a merger and that the refusal to do so contravenes our constitution; (3) that the action of the county board granting the petition was

arbitrary, oppressive, unreasonable, fraudulent, or based on an erroneous theory of law; and (4) that the evidence is insufficient to justify the trial court's findings sustaining the order of merger.

■ A petition signed by 20 percent of the freeholders of the district seeking merger with another district is required in order to give the Board of County Commissioners jurisdiction under § 122.09. There are 43 or 44 freeholders in district No. 8. It follows that 11 signers on the petition are sufficient and that the county board had jurisdiction unless the six who attempted to withdraw legally could do so.

In the case of In re Dissolution of School Dist. No. 33, 239 Minn. 439, 450, 60 N. W. (2d) 60, 67, we held that the signer of such petition may withdraw his signature before the board has acted on the petition but that—

"* * * the right of a signer to withdraw his name from a petition ceases to exist the moment the board of county commissioners exercises any action in reliance upon the jurisdiction conferred by the petition."

Appellant admits that this rule is contrary to his position here but urges us to overrule the decision. We think that the rule established is a workable and practical solution of this problem and that it should be adhered to. The attempt to withdraw here came after the county board had acted upon the petition; hence it was too late.

■ Appellant then contends that, before the petition was signed and filed, district No. 1 issued an ultimatum that it would not accept children from district No. 8 unless that district merged with it and that this ultimatum violates Minn. Const. art. 8, §§ 1 and 3.

It is somewhat difficult to follow appellant's reasoning as to what effect such ultimatum, even if in contravention of the constitution, would have on the action taken by the county board, but we surmise that the argument is that such ultimatum had some effect on the signers of the petition and that, if it had not been issued, they would not have signed; therefore, that the whole proceeding, in some way, is tainted by the ultimatum. If that is appellant's position, it is doubtful that it can be sustained on any theory. In the first place,

neither the county board nor the trial court based its decision on any such ultimatum. In the second place, the ultimatum, if issued, is not contrary to our constitution. Minn. Const. art. 8, § 1, reads as follows:

"The stability of a republican form of government depending mainly upon the intelligence of the people, it shall be the duty of the legislature to establish a general and uniform system of public schools."

Section 3, as far as material, reads:

"The legislature shall make such provisions, by taxation or otherwise, as, with the income arising from the school fund, will secure a thorough and efficient system of public schools in each township in the State."

Our constitution has vested in the legislature plenary power as to the manner of establishing a system of schools.[1] In carrying out this mandate, the legislature has selected school districts as the governmental agencies to perform the duties of educating the children of the state and has endowed the members of school boards with such powers as it has deemed necessary to carry out the functions of the school district.[2]

Appellant argues that Ex. Sess. L. 1955, c. 1, § 3, amending M. S. A. 128.082, subd. 6, now enables a school district to charge as tuition the full cost of educating nonresident children sent to it from other districts and that consequently there no longer is any constitutional right to reject such children or refuse to accept them; that Minn. Const. art. 8, § 1, "requires a 'general and uniform system of public schools.' This must mean 'general and uniform' in *access* and in *quality*"; and that to refuse to accept nonresident students deprives them of their constitutional right to receive an education equal to that available to resident students. While the argument is an ingenious one, it is contrary to our statutes and the general rule followed

---

[1]Board of Education v. Erickson, 209 Minn. 39, 295 N. W. 302.

[2]See, State ex rel. Klimek v. School Dist. No. 70, 204 Minn. 279, 283 N. W. 397.

elsewhere on this matter.

The general rule followed under constitutional provisions such as ours is that nonresident children have no absolute right of attendance in a district other than their own.[3]

It is well established that the legislature may require payment of a per-pupil charge from the district in which a pupil resides to the district accepting such child for education.[4] Whether the legislature could constitutionally compel one district to accept all children from other districts who desire to attend there, with or without full payment of a fair share of the cost, we need not now determine. That our legislature has not done so is clear. M. S. A. 132.01 reads in part:

"All schools supported in whole or in part by state school funds shall be styled public schools and admission to and tuition therein shall be free to all persons between the ages of five and 21 years, *in the district in which such pupil resides.*" (Italics supplied.)

Section 125.06, subd. 11, reads in part:

"It [the school board] *may* provide for the admission to the schools of the district, of non-resident pupils, * * * and fix the rates of tuition for such pupils." (Italics supplied.)

The language of antecedent statutes is even more specific. L. 1877, c. 74, subc. 2, § 14, reads in part:

"The board of education * * * shall have sole power to admit the attendance of * * * non-residents of their districts, upon payment of such rates of tuition as may be determined by the board; * * *."[5]

It is obvious that the use of the word "may" in § 125.06, subd. 11, is permissive.[6]

[3]State ex rel. Comstock v. Joint School Dists. 65 Wis. 631, 27 N. W. 829; 47 Am. Jur., Schools, § 154; 79 C. J. S., Schools and School Districts, § 449b.

[4]Associated Schools v. School Dist. No. 83, 122 Minn. 254, 142 N. W. 325, 47 L.R.A.(N.S.) 200.

[5]See, also, G. S. 1878, c. 36, § 32; G. S. 1894, § 3697; R. L. 1905, § 1321; G. S. 1913, § 2747.

[6]See State ex rel. Klimek v. School Dist. No. 70, 204 Minn. 279, 283 N. W. 397, with respect to the use of the word "may" in subd. 14 of the same section.

It follows that under our statute the school board of each district may, in its discretion, refuse to admit students from other districts except to the extent provided by law.[7] There are many reasons why this should be so. If appellant's position were tenable, a school district would have to accept children from any other school district in the state. In the efficient operation of schools, the actual day-to-day cost is only one of the factors with which the school board must contend. The board must know also, within at least approximate limits, what its present and future school population will be. It must gear its present and future physical plant and personnel to such ascertainable school population. It must also know, within reasonable limits, what its tax base is going to be. There are many other similar factors which are of equal importance, none of which could be ascertained or even estimated if it were compelled to accept children from any and all other school districts desiring to send children there. From these considerations it is apparent that § 128.082, subd. 6, as amended, must be read with other statutory provisions, and it comes into play only if the school board is willing to accept nonresident students. Consequently, it follows that the alleged ultimatum, even if issued, could not have affected the jurisdiction of the county board in acting in this proceeding, and it therefore was both immaterial and ineffective to invalidate the action of the county board.

■ Finally, appellant contends that the action of the county board was so arbitrary, oppressive, and unreasonable as to constitute an abuse of discretion and that the evidence is insufficient to sustain the trial court's order affirming the action of the county board.

The scope of review of the county board's order, as well as that of the trial court, is stated sufficiently in our opinion in In re Certain School Districts, Freeborn County, 246 Minn. 96, 74 N. W. (2d) 410.

The facts in the case at bar and the arguments advanced in support of appellant's position regarding the action taken by the county board are so similar to those presented in In re Merger of Certain

---

[7]See, for instance, provisions of § 125.06, subd. 11, giving a person who owns land in a school district and pays taxes thereon rights to benefits in such district even though he resides in another district; see, also, § 132.02.

School Districts, Pipestone County, 246 Minn. 110, 74 N. W. (2d) 419, that reference to our decision in that case should be sufficient to show that appellant cannot hope to prevail on this ground. The same independent school district was involved.

In the main, appellant contends that district No. 8 has an adequate grade school; that it is the desire of a majority of the freeholders and residents of the district to retain their own school and school district; that the parents of some of the children prefer to have them closer to home; and finally, that a high school is available in Pipestone if this court will declare unconstitutional an act of district No. 1 in refusing to accept children from district No. 8. As opposed to these claims, the evidence in the case shows, and the county board and trial court could find, that district No. 8 has not and cannot maintain a high school and cannot provide a high school for its children of school age within a reasonable distance; that nearly all of the children in district No. 8 have attended high school in Pipestone in the past; that district No. 8 closed its grade school in 1946 and nearly all of its grade school children have been transported to Pipestone since that time; that if the districts are merged the bus routes may be shortened; that the schools in Pipestone offer a broader range of subjects and have more equipment and better educational facilities; that under a merger the children will have greater security in knowing from year to year where they will attend school; that district No. 1 has visual aid equipment and district No. 8 does not; and that there are other advantages in attending a larger and better-equipped school.

From a consideration of these advantages and other evidence in the case, the county board had ample grounds for determining that it was for the best interests of both school districts that they be merged. In doing so, we find no abuse of discretion. The trial court's order affirming the action of the county board likewise is amply sustained by the evidence.

Affirmed.