## CAROLE J. PERRY v. INDEPENDENT SCHOOL DISTRICT NO. 696 AND OTHERS.

210 N. W. 2d 283.

August 24, 1973—No. 43253.

*Reavill, Neimeyer, Johnson, Fredin & Killen, Conrad M. Fredin,* and *David A. Bourgin,* for appellant.

*Peterson & Popovich, Peter S. Popovich, James E. Knutson,* and *Ivars J. Krafts,* for respondents.

*Clinton J. Hall,* for Minnesota Education Association, amicus curiae.

Heard before Knutson, C. J., and Otis, Peterson, and Kelly, JJ.

PER CURIAM.

Plaintiff, Carole J. Perry, brought this action for a declaratory judgment determining that she is a duly qualified teacher in defendant school district in Ely, Minnesota, and requiring defendants to grant her permanent contract status pursuant to this state's continuing contract law, Minn. St. 125.12. The court de-

termined that she was not entitled to relief and ordered dismissal of the action with prejudice. Plaintiff appeals from the denial of her motion for a new trial. We reverse.

Plaintiff is a qualified elementary school teacher certified by the state. Her ability and qualifications as a teacher were equivalent to those of other teachers in defendant school district.

On November 14, 1960, the school board adopted a policy not to hire married women teachers except as substitutes. This rule was to be waived only where there were last-minute vacancies in the teaching staff, in which case only a special contract without the usual continuing contract provision was to be offered. One of the reasons for this policy was that women teachers present employment problems because of pregnancies and the care of their children.

In December 1965, plaintiff was hired as a substitute grade school teacher and rendered satisfactory service for the remainder of the 1965-1966 school term. On August 23, 1966, she was hired as a "long-term substitute" for the 1966-1967 school year. She was not offered a regular employment contract although a regular contract form was used with the word "SUBSTITUTE" typed at the top and the following language typed within the body:

"Party of the first part agrees to teach as a substitute teacher during the school term of 1966-67 receiving any fringe benefits given regular staff members, and it is mutually agreed that this contract shall terminate at the end of said school term."

Plaintiff was informed that because she was a married woman, a substitute teacher's contract was the only form of contract she would be offered in that school district. She was neither hired to replace a teacher on leave of absence nor did an emergency exist in the school district except for the lack of qualified male or single teachers. Her teaching during that school year was satisfactory and she fulfilled all the duties of a regular teacher.

On August 15, 1967, plaintiff was offered a similar contract for the 1967-1968 school term. Conditions in the school system

at the time of contracting and plaintiff's performance during the school year were the same as the previous year.

On August 13, 1968, plaintiff was offered a substantially similar contract for the 1968-1969 school year. The only pertinent change was that the provision for termination of her employment contract was changed to read:

"It is mutually agreed that this contract may be terminated prior to the end of the school term should a suitable permanent staff member be employed."

Again, conditions in the school system and the plaintiff's performance of her duties were the same as the previous years.

On March 18, 1968, and again on March 18, 1969, plaintiff received letters from the superintendent of the school district thanking her for her teaching services and informing her that, pursuant to her contract, her employment would be terminated at the end of the year. In addition, the letters informed her that future employment would depend on whether a permanent replacement was found before the next school year began.

In the middle of April 1969, plaintiff, after consulting counsel concerning her rights, advised the superintendent that she was available to teach the following year. Thereafter, no action was taken by the school board in terminating her contract and she received no formal notice of proposed termination or discharge. She was never given any reason why she was not rehired other than that she was a married woman. Plaintiff has never requested a hearing on her yearly termination although she had asked the superintendent to bring her request for continued employment before the school board.

Three issues are raised on appeal: First, whether a school board under its statutory grant of general powers may except a teacher's contract from the provisions of Minn. St. 125.12 (continuing contract law) by classifying such teacher as a "long-term substitute"? Secondly, has a teacher who signed a contract limiting employment to one year waived her rights to a continuing contract as provided by the statute? Thirdly, does a school board

policy refusing regular employment to married women teachers deny rights guaranteed under Minnesota statutes and the 14th Amendment to the United States Constitution?

1. School boards and school districts are created by statute and have only such powers as are conferred upon them by the legislature. Independent School Dist. No. 581 v. Mattheis, 275 Minn. 383, 147 N. W. 2d 374 (1966); Minneapolis Federation of Teachers v. Obermeyer, 275 Minn. 347, 147 N. W. 2d 358 (1966); Board of Education v. Sand, 227 Minn. 202, 34 N. W. 2d 689 (1948). The legislature may regulate the manner of exercise of this power and modify or abrogate it as desired. Melby v. Hellie, 249 Minn. 17, 80 N. W. 2d 849 (1957); State ex rel. Klimek v. School Dist. No. 70, 204 Minn. 279, 283 N. W. 397 (1939); Kramer v. County of Renville, 144 Minn. 195, 175 N. W. 101 (1919).

Minn. St. 123.33 authorizes a school board to manage the schools within its district and adopt necessary rules and policies for their administration. The trial court, relying on Brown v. Wells, 288 Minn. 468, 181 N. W. 2d 708 (1970), reasoned that policies and regulations of a school board should not be overturned by the courts unless they are clearly unreasonable and arbitrary. The court concluded that the policy in the present case of not offering regular contracts to married women was not unreasonable.

Although a school board is given authority to regulate the operative affairs of the school district, the legislature has limited its powers in regard to the employment of teachers. Minn. St. 123.35, subd. 5, provides:

"The board shall employ and contract with necessary qualified teachers and discharge the same for cause, but no substitute teacher shall be hired *except to replace a regular teacher on leave of absence or in an emergency of less than one school year's duration.*" (Italics supplied.) [1]

---

[1] The last clause of this section limiting the hiring of substitute teachers was added by Ex. Sess. L. 1959, c. 71, art. IV, § 17.

In addition to this limitation on hiring of substitutes, the termination of a teacher's employment is governed by the continuing contract statute, § 125.12. These provisions apply to all "teachers," defined in subdivision 1, as:

"A superintendent, principal, supervisor, and *classroom teacher* and any other professional employee required to hold a certificate from the state department * * *." (Italics supplied.)

A school board has no authority to except a teacher's contract from the continuing contract statute by offering yearly contracts designating the teacher as a "long term substitute." If the employee comes within the statutory definition of teacher and is hired for an emergency which exceeds the period for which a substitute can be hired, the continuing contract statute applies regardless of the terms of the contract itself.

Plaintiff was certified by the state department and hired as an elementary classroom instructor. Her initial employment in December 1965 for the remainder of that school year was in an emergency of less than one year's duration and therefore not subject to the continuing contract provisions. However, when she was hired for the following school year of 1966-1967, the contract provided for employment in excess of the period for which a "substitute" may be hired. Her contract was therefore not self-terminating at the end of the school year as stated in her contract because it was in contravention of Minn. St. 123.35, subd. 5. Consequently, the school board was required to follow the procedures for nonrenewal of her contract as set forth in § 125.12, subd. 3, which provides:

"The first and second consecutive years of a teacher's first teaching experience in Minnesota in a single school district shall be deemed to be a probationary period of employment. * * * During the probationary period any annual contract with any teacher may or may not be renewed as the school board shall see fit; provided, however, that the school board shall give any such

teacher whose contract it declines to renew for the following school year written notice to that effect before April 1. * * *"

For nonprobationary teachers, subd. 4, states:

"A teacher who has completed his probationary period in any school district, and who has not been discharged or advised of a refusal to renew his contract pursuant to subdivision 3, shall have a continuing contract with such district. Thereafter, the teacher's contract shall remain in full force and effect, except as modified by mutual consent of the board and the teacher, until terminated by a majority roll call vote of the full membership of the board, upon one of the grounds specified in subdivision 6, or by the written resignation of the teacher, before April 1, or until the teacher is discharged pursuant to subdivision 8. * * * Before a teacher's contract is terminated by the board, the board shall notify the teacher in writing and state its ground for the proposed termination * * *." [2]

The statute thereafter specifies the procedures for hearings on a proposed termination.

We have often recognized that the purpose of the teacher tenure legislation is to protect the educational interests of the state by preventing arbitrary demotions and discharges of teachers which are unrelated to their ability. McSherry v. City of St. Paul, 202 Minn. 102, 277 N. W. 541 (1938); Oxman v. Independent School Dist. of Duluth, 178 Minn. 422, 227 N. W. 351 (1929). A school board must strictly comply with these provisions, and an attempt to discharge a teacher contrary to the statutory procedures is ineffective. Hueman v. Independent School Dist. No. 77, 243 Minn. 190, 67 N. W. 2d 38 (1954); Downing v. Independent School Dist. No. 9, 207 Minn. 292, 291 N. W. 613 (1940). Even if a teacher's contract does not expressly incorpo-

---

[2] This precise language and form of the statute was adopted by L. 1967, c. 890, § 1. However, for the purposes of our decision, the statute was substantially the same prior to 1967. Minnesota Assn. of Public Schools v. Hanson, 287 Minn. 415, 422, 178 N. W. 2d 846, 852 (1970).

rate the provisions of the tenure laws, we have held that the contract impliedly incorporates them. Minnesota Assn. of Public Schools v. Hanson, 287 Minn. 415, 178 N. W. 2d 846 (1970). Under the provisions of Minn. St. 125.12, the right to a continuing contract is to be determined by the extent of continuous teaching employment within a district rather than by the number of contracts or the time period specified within each contract. See, Frisk v. Board of Education of City of Duluth, 246 Minn. 366, 75 N. W. 2d 504 (1956); McSherry v. City of St. Paul, *supra.*

Plaintiff started her probationary period of teaching during the 1966-1967 school year. This probationary period continued during the following year in spite of the self-terminating wording of the contract itself because her contract was renewed for the next year.

At the end of this second consecutive year (1967-1968), plaintiff was not notified pursuant to the statute that her contract was not going to be renewed. Even if the school board's letter of March 18, 1968, is considered adequate notification under § 125.12, it was ineffective because plaintiff was in fact rehired for the following school year. When she was employed for the third consecutive year of 1968-1969, she had a continuing contract with the school district. Thereafter, her contract could only be terminated pursuant to subd. 4 of the statute.

Once a teacher has a continuing contract with a school district, his or her contract can only be terminated (1) by resignation, (2) by a majority roll call vote of the school board for one of the grounds specified in § 125.12, subd. 6,[3] or (3) through an immediate discharge for one of the grounds specified in subd.

---

[3] Minn. St. 125.12, subd. 6, specifies that a teacher's continuing contract may be terminated for unsatisfactory teaching performance or conduct interfering with teaching duties. In addition, such contracts may be terminated when the position is discontinued for various reasons.

8 of the statute.[4] Plaintiff never tendered a written resignation. The record shows that the school board did not vote on plaintiff's termination. Even if it had, no grounds were present for the board's action. The record shows that her teaching services were satisfactory and that the position was not discontinued. Therefore, no grounds for termination under Minn. St. 125.12, subd. 6, are present. Also, there is no indication of any misconduct by plaintiff to justify a discharge under subd. 8 of the statute.

Finally, we note in passing that notification of an impending termination as required by the statute was not given to plaintiff. The letter of March 18, 1969, advising her that her contract would terminate pursuant to its terms was not sufficient. We held in Zeller v. Prior Lake Public Schools, 259 Minn. 487, 108 N. W. 2d 602 (1961), that the statute requires notice of *proposed* termination and not of termination itself and that the requirements of specifying the grounds and of informing the teacher that she could request a hearing must be strictly followed. We must therefore conclude that plaintiff's continuing contract with defendant school district was never terminated according to the statute.

Defendants place much reliance on Backie v. Cromwell Consol. School Dist. No. 13, 186 Minn. 38, 242 N. W. 389 (1932), where this court held that a female teacher may be discharged when she marries. This reliance is misplaced since we also noted in that decision that "where a statute expressly provides the sole grounds and methods for a discharge, it must be substantially followed." 186 Minn. 42, 242 N. W. 391. The tenure statute in effect at the time of the Backie decision did not provide the extensive and exclusive procedures for discharging teachers after their probationary period which our present statute, Minn. St. 125.12, contains. The Backie decision is best viewed in light of

---

[4] Minn. St. 125.12, subd. 8, allows the immediate discharge of a teacher for various reasons. These grounds are basically inability or improper conduct detrimentally interfering with a teacher's duties.

its own facts and the application of the tenure statute then in effect to those facts.

2. Since we hold that plaintiff is entitled to a continuing contract, it is next necessary to consider whether she has waived her rights through signing a contract which provided that it could be terminated at any time if a replacement was found. Minn. St. 125.12, subd. 4, provides that continuing contracts can be terminated upon the mutual consent of the teacher and the school board.

We have never confronted the precise question of whether a teacher waives continuing contract rights by accepting a limited contract for the year in which such rights would accrue. However, a closely analogous question was considered in Hosford v. Board of Education, 201 Minn. 1, 275 N. W. 81 (1937). In that case a teacher had been employed under written contracts for 3 years, which was the probationary period under the applicable statute. She thereafter tendered her resignation with the understanding that she would be reemployed the following year. We held (201 Minn. 7, 275 N. W. 84):

"A resignation by a teacher at the end of her probationary period, given *without any intention of terminating her employment as a teacher* and upon a definite promise that she will be reemployed, is ineffectual and does not defeat her right to tenure upon reemployment. Reemployment after completion of the probationary period gives rise to tenure rights on the part of the teacher. Such a resignation is in circumvention of the teachers tenure law and is void." (Italics supplied.)

The court went on to note that plaintiff had been reemployed in the same capacity at the same school to perform the same type of work and was not rehired merely as a substitute.

In a subsequent decision involving the same parties, the court held that although the teacher had acquired tenure status, the statute did not prevent a demotion at the request of or with the consent of the teacher. Hosford v. Board of Education, 203 Minn. 138, 280 N. W. 859 (1938). Upon the mutual consent of a teacher

and a school board, a known right may be voluntarily waived. State ex rel. Johnson v. Independent School Dist. No. 810, 260 Minn. 237, 109 N. W. 2d 596 (1961). It is the intention of the parties with respect to the matter that is controlling. Board of Education v. Sand, 227 Minn. 202, 34 N. W. 2d 689 (1948).

A number of cases from other jurisdictions are cited by defendants to support the position that plaintiff has waived her right to tenure. None of these cases involve the factual setting presented here—i.e., the acceptance of a limited contract for the year in which tenure would be acquired. However, research has revealed a number of cases more analogous to the instant case. These cases hold that acceptance of limited employment in the year after the probationary period does not constitute a waiver of tenure rights.

In State ex rel. Rose v. Board of Education, 74 Ohio App. 63, 57 N. E. 2d 609 (1944), an Ohio intermediate appellate court distinguished the cases which held that acceptance of a limited contract after a resignation by a tenure teacher constituted a waiver of tenure. The court noted that it was the act of resigning and not the acceptance of a limited contract which constituted the waiver. After examining a number of cases, the court observed (74 Ohio App. 75, 57 N. E. 2d 615):

"All the facts and surrounding circumstances in the instant cases indicate there was never any intention on the part of the teachers to relinquish the rights conferred upon them by statute. The acceptance of employment from year to year is not inconsistent with claiming the benefits of the tenure act. There has been no abandonment on the part of the teachers of the beneficial statutory provisions provided for them and in no way can the respondent board maintain that it has been misled or prejudiced by the teachers teaching under the only contract of employment the board was willing to grant. The board of education created the conditions it now complains of as constituting a waiver on the part of the teacher. * * *

"To hold under the circumstances that these teachers volun-

tarily waived their statutory rights by accepting employment from year to year would be tantamount to holding that by going ahead and performing their duties as teachers in the schools that they intended thereby to surrender their respective rights under the statute and be forever deprived of its benefits. No such intention can be inferred from the act and conduct of the respective relators in continuing to teach. Much more commendable is such conduct on their part than standing by and refusing to begin the school year until the desired contract was forthcoming."

New York has also recognized that the mere acceptance of an appointment labeled "probationary" after completion of the probationary period would not constitute a waiver of tenure. Becker v. Board of Education, 9 N. Y. 2d 111, 211 N. Y. S. 2d 193, 172 N. E. 2d 568 (1961). However, it was found that the teacher had not acquired tenure because she had not fulfilled other requirements under the tenure act.

From the reasoning of these cases and the holdings of this court that tenure rights can only be waived if waiver is clearly intended, we hold that plaintiff did not waive her continuing contract rights by accepting a limited contract. She was given no choice between a regular and a substitute contract, a fact which indicates that she has not intentionally and voluntarily waived her rights. The school board appears to have utilized this device solely to avoid giving tenure to married women in circumvention of Minn. St. 125.12 while at the same time securing their teaching services for the year. A contract designed to waive a teacher's substantive right to a continuing contract frustrates the purpose of the statute and is therefore against public policy.

3. Since plaintiff is entitled to a continuing contract under Minn. St. 125.12—a right which cannot be denied by labeling her as a "long-term substitute"—and since she has not waived this right, we need not decide at this time constitutional issues created by the school board's policy in the hiring of married women teachers.

Reversed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.