**Karen BRUTON, Appellant,**

v.

**AMES COMMUNITY SCHOOL DISTRICT and Board of Education of Ames Community School District, Appellees.**

**2–63882.**

Supreme Court of Iowa.

April 23, 1980.

James L. Sayre of Dreher, Wilson, Adams, Jensen, Sayre & Gribble, Des Moines, for appellant.

Edgar H. Bittle of Ahlers, Cooney, Dorweiler, Haynie & Smith, Des Moines, for appellees.

John R. Phillips and Kathleen A. Reimer of Rogers, Phillips & Swanger, Des Moines, for Iowa Ass'n of School Boards, Inc., amicus curiae.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, McCORMICK and LARSON, JJ.

UHLENHOPP, Justice.

This appeal involves the validity of the following clause in a contract of a nonprobationary public-school teacher:

> It is mutually agreed that this contract shall be for one year only and shall not continue beyond the 2nd day of June, 1978. On said date this contract shall terminate without notice, hearing, or any other action by the Board. Provided, however, that this provision shall not in any way affect the right of the District, if it so elects, to terminate the contract in accordance with the provisions of Section 279.24, Code of Iowa, 1975, as amended.

The Ames Community School District employed Karen Bruton as a teacher for four consecutive years. No question exists as to her competency or performance; hence the case does not involve a discharge for just cause which is personal to the teacher pursuant to section 279.27 of the

Code (section 279.24 in the Code of 1975). Neither does the case involve an agreed settlement of a dispute between a school district and a teacher during the school year, *see In re Abramovich v. Board of Education*, 46 N.Y.2d 450, 414 N.Y.S.2d 109, 386 N.E.2d 1077 (1979), or a temporary substitute teacher.

At the end of the 1976–1977 school year, which was Bruton's third consecutive year of employment, the district had terminated Bruton's contract in accordance with chapter 279, The Code 1977. The district then employed her to teach on a part-time basis for the 1977–1978 year and, to enable it to plan for staff reduction, staff realignment, and changing program needs, incorporated the quoted one-year-only clause in her contract. The district inserted similar clauses in some of the other teachers' contracts it negotiated that year.

On March 13, 1978, the superintendent of the district notified Bruton in writing he would recommend to the school board that her contract be terminated at the end of the 1977–1978 school year. The reason given in the notice was as follows:

> The recommendation to terminate your contract is being made for the reason that it has been mutually agreed that your contract is for one year only and shall not continue beyond the 2nd day of June, 1978. Pursuant to your contract on the aforesaid date, your contract shall terminate without notice, hearing, or any other action of the Board.

The superintendent did in fact so recommend termination of Bruton's employment. The board thereafter held a private meeting with Bruton as a matter of courtesy. The parties stipulated additional facts in the controversy, but those facts are not material to the view we take of the case.

After the private meeting the board rendered its decision stating as the issue, so far as we are now concerned, "Is the contractual provision illegal and against public policy?" and concluding, "[W]e believe that the contract provision in the instant case is valid and so hold." The board therefore determined that Bruton's contract "is hereby terminated effective at the end of the current school year."

Bruton appealed to an adjudicator, who affirmed. She next appealed to district court, which likewise affirmed. She then appealed to this court, and we retained the appeal because of the question of the validity, under present legislation, of the clause in the contract purporting to limit Bruton's employment to one year.

In 1976 the General Assembly enacted a statute which "completely revised the procedure for terminating school teachers' contracts." *Board of Education v. Youel*, 282 N.W.2d 677, 678 (Iowa 1979). *See* 1976 Session, 66th G.A., ch. 1151, §§ 279.13–279.-19, The Code 1977 (references are to that Code unless otherwise stated). That enactment was in effect at the time of these events. The questioned clause in Bruton's contract purports to waive the substantive and procedural provisions of that statute, and the question is whether such a waiver by a teacher—or by a school district—is valid. Thus the area of contract law in which we find ourselves has to do with the kinds of statutory provisions which may be waived or may not be waived by contracting parties. *See* 17 Am.Jur.2d *Contracts* § 173 (1964); 17 C.J.S. *Contracts* § 207 (1963). The enactment which we have here is one variety of what are commonly called teacher-tenure statutes. 68 Am.Jur.2d *Schools* § 149 (1973); 78 C.J.S. *Schools and School Districts* §§ 180, 183, 192 (1952).

For present purposes, the Iowa law on the duration of teachers' contracts involves three stages of statutory development and may be traced back to a case which itself did not involve a teacher, *Black v. Consolidated Independent School District*, 206 Iowa 1386, 222 N.W. 350 (1928). A school board hired Black as a school-bus driver by written contract containing the clause, "The board of directors reserves the right to terminate this contract at any time." At that time section 4182 of the Code of 1924 required a driver's employment contract to state "the length of time contracted for" but did not specify any period of time. Nor did it provide for automatic renewal of

drivers' contracts. Under that statute this court upheld the quoted termination clause in the contract. *Id.* at 1388, 222 N.W. at 351.

Following *Black* in the first stage of statutory development came *Miner v. Lovilia Independent School District*, 212 Iowa 973, 234 N.W. 817 (1931). That case involved a clause in a teacher's contract stating "That either party to this contract on 20 days' written notice to the other may terminate this contract." Section 4229 of the Code of 1928 provided that teachers' contracts should contain several items not now material and also "such other matters as may be agreed upon, which may include employment for a term not exceeding the ensuing school year. . . ." Upholding the quoted termination clause, this court stated, *id.* at 980, 234 N.W. at 820:

> We have no occasion to discuss this question as a matter of first impression. We are committed to the principle involved that such a contractual provision is within the purview of the board's capacity to contract. *Black v. Consolidated School District*, 206 Iowa, 1386, 222 N.W. 350.

The *Black* and *Miner* decisions appear at this later day to be proper applications of the statutes of the time. They embedded in Iowa decisional law the principle that termination clauses of the kinds involved in those cases are valid under the types of statutes then existing.

The next case of significance to the present inquiry, although not involving a teacher, is *Independent School District v. Samuelson*, 222 Iowa 1063, 270 N.W. 434 (1936). There the contract of a school superintendent, Baker, contained the following clause: "[T]he contract may be terminated at any time by said second party [board], for any reason, by giving thirty days notice, in writing, of such intention to said first party [Baker]." Early in the school year the board discharged Baker under that clause. The statutes were substantially the same as previously; in addition, section 4230 of the Code of 1931 stated with reference to superintendents that boards "shall have power to employ a superintend-

ent of schools for one year." Notwithstanding the statutory reference to one year, this court held neither the county nor state superintendent of schools had jurisdiction to grant Baker relief and upheld the quoted termination clause, stating, *id.* at 1069, 270 N.W. at 437:

> Thus the question involved in this appeal is not one of first impression, having been determined both in the Black case and in the Miner case above referred to. We see no reason for a retreat from the rule announced in those two cases and following such rule we are constrained to hold that an appeal would not lie to the county and state superintendents from the action of the board of the school township in canceling Baker's contract and discharging him, and that neither of the superintendents had jurisdiction or authority to entertain the appeal and determine the questions involved.

*Samuelson* closed the line of cases under the first stage of statutory development.

The next pertinent case is *Ashby v. School Township of Liberty*, 250 Iowa 1201, 98 N.W.2d 848 (1959). There a clause in a teacher's contract stated in paragraph g "That in case the enrollment of said school becomes less than six this contract becomes null and void." The enrollment did fall below six, and the board closed the school and discharged the teacher. Quoting from *Black, Miner*, and *Samuelson*, this court upheld the quoted clause, stating, *id.* at 1212, 98 N.W.2d at 856:

> It will be observed the contract provisions upheld in the Black, Miner and Samuelson decisions against attacks similar to the one now urged are all broader than paragraph g here in that they reserve unlimited authority to terminate the contract, with or without good cause. Here, however, the right is conditioned upon enrollment becoming less than six. Certainly the present contract provision is the more reasonable and less likely to result in arbitrary action.

*Ashby* was decided under the teacher-contract statute in its second stage, resulting from 1941 and 1945 amendments to the

statute. Section 279.13 of the 1950 Code, embodying the statute as amended, contained these relevant clauses: contracts shall contain, in addition to specified items, "such other matters as may be agreed upon, which may include employment for a term not exceeding the ensuing school year" (same as prior statute); "Said contract shall remain in force and effect for the period stated in the contract and thereafter shall be automatically continued in force and effect for equivalent periods, except as modified or terminated by mutual agreement of the board of directors and the teacher, until terminated as hereinafter provided" (new); and a procedure for termination by the board's notifying the teacher and, on request, holding a public hearing (new). This court held that these changes did not affect the *Black-Miner-Samuelson* rationale, at least in the context of the *Ashby* factual setting. *Id.* at 1214, 98 N.W.2d at 857. Significantly, the statute in this second stage provided a *procedure* for contract nonrenewal; it did not require *grounds* for nonrenewal. In addition the action of the board was final. § 279.13, Code 1950 ("Upon the conclusion of the hearing the board shall determine the question of continuance or discontinuance of the contract by a roll call vote entered in the minutes of the board, and the action of the board shall be final.").

The next case, also in the second statutory stage, is *Moravek v. Davenport Community School District*, 262 N.W.2d 797 (Iowa 1978). That case involved a contract clause establishing a grievance procedure which gave termination authority to an arbitrator—although the statute which we have quoted gave that authority to the board. In *Moravek* we thus dealt with the *board's* ability to waive its rights under the statute, rather than the *teacher's* ability to waive. Although we considered *Miner* and *Ashby* (and another decision not now involved), we held the waiver invalid, saying, *id.* at 805 (citation omitted):

> Nevertheless, we conclude these cases do not justify a determination that the phrase "and such other matters as may be agreed upon" would warrant extending

to the contracting parties the right to mutually agree to abolish the board's exclusive power to renew, or not to renew, teachers' contracts. This is particularly true in light of the significant role given the District by the legislature in maintaining integrity and efficiency in school administration.

We come to the third and present statutory stage. In its 1976 overhaul of the teachers' contract statute in sections 279.13 to 279.19, the General Assembly retained some provisions of the previous statute. Thus section 279.13 includes clauses that the contract "may include employment for a term not exceeding the ensuing school year" and shall state "any other matters as may be mutually agreed upon," and provides that the contract "shall remain in force and effect for the period stated in the contract and shall be automatically continued for equivalent periods except as modified or terminated by mutual agreement of the board of directors and the teacher or as terminated in accordance with the provisions specified in this chapter." The General Assembly did however make several substantial changes.

One change is the creation of the status of probationary teacher during the first two consecutive years of employment. § 279.19. Termination of a probationary teacher's contract may be effected by following the procedure before the board applicable to a nonprobationary teacher, but the board's decision as to a probationary teacher "shall be final and binding" unless a termination is based on alleged violation of a constitutional right or of an employee right under section 20.10 of the Code (collective bargaining law).

Another change is substantially expanded procedure for terminating a teacher's contract at the end of the school year. While the initial procedure is not much different than before, detailed steps are added in sections 279.13 to 279.18.

Still another change, and a substantive one, removes from boards the final authority to terminate nonprobationary teacher

contracts at the end of the year. *Compare* § 279.13, The Code 1975 ("the action of the board shall be final"), *with* §§ 279.17 and 279.18, The Code 1977 (under section 279.17 the nonprobationary teacher can appeal from the board's decision to an adjudicator, whose decision supersedes the board's decision, and under section 279.18 either party can appeal from the adjudicator to the courts).

Perhaps the most basic change, however, is the abolition of the board's substantive right of termination, without grounds, of nonprobationary teachers' contracts as of the end of the school year; the General Assembly enacted a requirement of "just cause" for termination. § 279.15(2) (superintendent's notification and recommendation to terminate "shall contain a short and plain statement of the reasons, which shall be for just cause"), § 279.16 (evidence at subsequent board hearing "shall be limited to the specific reasons stated in the superintendent's notice of recommendation of termination"), § 279.17 (adjudicator subsequently decides case on evidence before board unless he orders additional evidence to be introduced before board), § 279.18 (court subsequently decides appeal on the certified record). *See Board of Education v. Youel*, 282 N.W.2d at 684 (improperly handling football program constituted just cause for discontinuing contract); *Briggs v. Board of Directors*, 282 N.W.2d 740, 744 (Iowa 1979) (just cause in case of school administrator under parallel section 279.24). *Accord, DeShon v. Bettendorf Community School District*, 284 N.W.2d 329, 332 (1979) (attaining specified compulsory retirement age as just cause for nonrenewal).

The General Assembly thus established a new system consisting of two categories of teachers: probationary teachers, whose contracts are given procedural protection but are subject to nonrenewal in the final judgment of the board, and nonprobationary teachers, whose contracts are given procedural protection and are terminable on establishment of just cause. Did the General Assembly intend the *Black-Miner-Ashby* rationale to apply to this new system, permitting teachers and boards to waive their respective protections and rights under the statute, or did it intend that this renewal and nonrenewal process should apply uniformly to teachers' contracts throughout the state? *See 1 Chitty on Contracts* 429 (23rd ed. 1968) (validity of waiver of various statutory provisions); 6A *Corbin on Contracts* § 1515 (1962); 14 S. Williston, A Treatise on the Law of Contracts § 1628, at 3 (3d ed. W. Jaeger 1972).

The Supreme Court of Minnesota had a similar problem in *Perry v. Independent School District*, 297 Minn. 197, 210 N.W.2d 283 (1973). Notwithstanding the Minnesota automatic renewal law, the board there attempted to employ the teacher as a "long term substitute" with a contractual clause for termination at the end of the year (and a later clause for termination prior to the end of the year if a permanent teacher was found). The "substitute" teacher taught several years. The court held that the termination clause was ineffective and that the law wrote the tenure statute into the contract, saying, *id.* at 202–03, 210 N.W.2d at 287 (citations omitted):

We have often recognized that the purpose of the teacher tenure legislation is to protect the educational interests of the state by preventing arbitrary demotions and discharges of teachers which are unrelated to their ability. A school board must strictly comply with these provisions, and an attempt to discharge a teacher contrary to the statutory procedures is ineffective. Even if a teacher's contract does not expressly incorporate the provisions of the tenure laws, we have held that the contract impliedly incorporates them. Under the provisions of Minn.St. 125.12, the right to a continuing contract is to be determined by the extent of continuous teaching employment within a district rather than by the number of contracts or the time period specified within each contract.

*See also, Minnesota Association of Public Schools v. Hanson*, 287 Minn. 415, 423, 178 N.W.2d 846, 852 (1970) (teachers' contracts impliedly incorporate tenure statute); *Matter of Cohoes City School District v. Cohoes*

*Teachers Association*, 40 N.Y.2d 774, 777, 358 N.E.2d 878, 880, 390 N.Y.S.2d 53, 55 (1976) (reverse situation: collective bargaining contract clause ineffective whereby board gave up statutory right to terminate probationary teachers' contracts without necessity of establishing just cause); *State ex rel. Rose v. Board of Education*, 74 Ohio App. 63, 76, 57 N.E.2d 609, 615 (1944).

The Wisconsin Supreme Court also faced a similar problem in *Faust v. Ladysmith-Hawkins School Systems*, 88 Wis.2d 525, 277 N.W.2d 303 (1979). The contract stated that both parties accepted it with the ·understanding it would not be renewed. The court set out the requirements for a voluntary waiver and held that such a waiver of statutory renewal was not shown. The court also said:

> Under these standards it is apparent that Faust did not voluntarily and knowingly relinquish her right to the procedural requirements of the statutes. Moreover, we conclude that, even had she known of her rights and had voluntarily acquiesced in her waiver, the waiver would be ineffective. Where a statutorily created private right serves a public policy purpose, the persons or entities protected by the statute cannot waive the right. *Von Uhl v. Trempealeau County Mut. Ins. Co.*, 33 Wis.2d 32, 146 N.W.2d 516 (1966); *Jones v. Preferred Accident Ins. Co.*, 226 Wis. 423, 425, 275 N.W. 897 (1938).

> It is apparent that there are strong public policy reasons for concluding that the procedural rights afforded by sec. 118.22, Stats., cannot be waived by individual teachers. The provisions of that statute advance the legislatively declared public policy of promoting fairness and thoughtful decisionmaking in the rehiring of public school teachers. In addition, it establishes a comprehensive and orderly procedure governing the renewal or nonrenewal of teacher contracts in school districts which have no tenure system. These procedures inure to the benefit of not only the teacher and the school district but to the public at large.

*Faust*, 88 Wis.2d at 533, 277 N.W.2d at 306. *Cf. Edgeley Education Association v. Edgeley Public School District*, 231 N.W.2d 826, 833 (N.D.1975) (collective bargaining negotiations do not suspend requirements of automatic renewal statute).

Other jurisdictions have held that automatic-renewal and similar tenure statutes are written into teacher's contracts by the law. *Madison County Board of Education v. Wigley*, 288 Ala. 202, 210, 259 So.2d 233, 239 (1972) ("Teacher Tenure statutes are to be read into all contracts entered into by the school boards, and teachers. . . ."); *Carlson v. School District No. 6*, 12 Ariz. App. 179, 182, 468 P.2d 944, 947 (1970); *Maxey v. Jefferson County School District*, 158 Colo. 583, 586, 408 P.2d 970, 971–72 (1965) ("Such a tenure act has the effect of a contract between teacher and district."); *Board of Education v. Justice*, 268 S.W.2d 648, 650 (Ky.1954); *Pearson v. Board of Education*, 12 Ill.App.2d 70, 73, 138 N.E.2d 687, 689 (1956) ("The effect of the Teachers Tenure Law is to create a contract by operation of law."); *Arburn v. Hunt*, 207 Ind. 61, 62, 191 N.E. 148, 149 (1934) ("The entire [tenure] statute, with all its provisions, must be read into and considered a part of the contract."); *Lindbergh School District v. Syrewicz*, 516 S.W.2d 507, 512 (Mo.Ct. App.1974) ("As we view the [teacher tenure] Act, its purpose is to establish strictly defined grounds and procedures for removing a permanent teacher which may not be evaded or other procedures substituted therefor."). *But see Taylor v. Board of Education*, 31 Cal.App.2d 734, 742, 89 P.2d 148, 152 (1939).

■ The detailed provisions of our present teacher-contract statute are a far cry from the simple statutes of *Black* and *Miner* days. Upon consideration of our present statute and of the reasoning of the courts which have dealt with similar enactments, we hold that the law now writes sections 279.13 to 279.19 of the Code into teachers' contracts in Iowa and that the one-year-only clause in the present contract is of no effect.

The situation in this case presented the parties with several alternative courses of action. The board could have terminated Bruton's contract as of the end of the school year by pursuing a course and establishing just cause in accordance with sections 279.-13 to 279.18, if just cause existed. The one-year clause in the contract would not constitute just cause because it is of no effect. The board did not take this course of action. The board and Bruton could have terminated the contract by mutual agreement during or after the school year under section 279.13. They did not do so. Bruton could have resigned as of the end of the school year under section 279.13. She did not do so. The board could have discharged Bruton by following the procedure and establishing just cause relating to her personally in accordance with section 279.-27, if just cause existed, but again the ineffective one-year clause would not constitute just cause. The board did not take this avenue. Finally, the contract could automatically renew under section 279.13, which constituted a part of the contract. This is what actually happened.

REVERSED.